## COLORADO ANTI-DISCRIMINATION COMMIS-
## SION ET AL. *v.* CONTINENTAL
## AIR LINES, INC.

No. 146.  Argued March 28, 1963.—Decided April 22, 1963.*

---

*Together with No. 492, *Green* v. *Continental Air Lines, Inc.,* on certiorari to the same Court.

*T. Raber Taylor* and *Floyd B. Engeman,* Assistant Attorney General of Colorado, argued the cause and filed briefs for petitioners. With *Mr. Engeman* on the brief for petitioners in No. 146 was *Duke W. Dunbar,* Attorney General of Colorado.

*Patrick M. Westfeldt* argued the cause for respondent. With him on the brief was *William Cant McClearn.*

By special leave of Court, *Howard H. Jewel,* Assistant Attorney General of California, argued the cause for the State of California, as *amicus curiae* in No. 146, urging reversal. With him on a brief for the States of California and Missouri, as *amici curiae,* were *Stanley Mosk,* Attorney General of California, *Thomas F. Eagleton,* Attorney General of Missouri, *Victor D. Sonenberg,* Deputy Attorney General of California, *James J. Murphy,* Assistant Attorney General of Missouri, and *Charles E. Wilson.*

By special leave of Court, *Shirley Adelson Siegel,* Assistant Attorney General of New York, argued the cause for the State of New York, as *amicus curiae* in No. 146, urging reversal. With her on the brief were *Louis J. Lefkowitz,* Attorney General, *Paxton ·Blair,* Solicitor General, and *Samuel A. Hirshowitz* and *George D. Zuckerman,* Assistant Attorneys General of New York, *George N. Hayes,* Attorney General of Alaska, *William G. Clark,* Attorney General of Illinois, *Edwin K. Steers,* Attorney General of Indiana, *William M. Ferguson,* Attorney General of Kansas, *Edward J. McCormack, Jr.,* Attorney General of Massachusetts, *Frank J. Kelley,* Attorney General of Michigan, *Walter F. Mondale,* Attorney General of Minnesota, *Thomas F. Eagleton,* Attorney General of Missouri, *Arthur J. Sills,* Attorney General of New Jersey, *Mark McElroy,* Attorney General of Ohio, *Robert Y. Thornton,* Attorney General of Oregon, *David Stahl,* Attorney General of Pennsylvania, *J. Joseph*

*Nugent,* Attorney General of Rhode Island, *John J. O'Connell,* Attorney General of Washington, and *George Thompson,* Attorney General of Wisconsin.

Briefs of *amici curiae,* urging reversal in Nos. 146 and 492, were filed by *Solicitor General Cox, Assistant Attorney General Marshall, Bruce J. Terris, Harold H. Greene* and *David Rubin* for the United States; and by *Gilbert Goldstein, Arnold Forster, Charles Rosenbaum, Edwin J. Lukas, Paul Hartman, Theodore Leskes* and *Sol Rabkin* for the Anti-Defamation League of B'nai B'rith et al. Brief of *amici curiae,* urging reversal in No. 146, was filed by *Joseph B. Robison, Melvin L. Wulf* and *Jack Greenberg* for the American Jewish Congress et al. Brief of *amicus curiae,* urging reversal in No. 492, was filed by *Quentin Oscar Ogren* for the Catholic Council on Civil Liberties.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner Marlon D. Green, a Negro, applied for a job as a pilot with respondent Continental Air Lines, Inc., an interstate air carrier. His application was submitted at Continental's headquarters in Denver, Colorado, and was later considered and rejected there. Green then made complaint to the Colorado Anti-Discrimination Commission that Continental had refused to hire him because he was a Negro. The Colorado Anti-Discrimination Act of 1957 provides that it is an unfair employment practice for an employer "to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against, any person otherwise qualified, because of race, creed, color, national origin or ancestry." [1] After investigation and efforts at conciliation, the Commission held

---

[1] Colo. Rev. Stat. Ann. (Supp. 1960) § 80–24–6.

extensive hearings and found as a fact "that the only reason that the Complainant was not selected for the training school was because of his race." [2] The Commission ordered Continental to cease and desist from such discriminatory practices and to "give to the Complainant the first opportunity to enroll in its training school in its next course . . . ." On review the District Court in and for the City and County of Denver set aside the Commission's findings and dismissed Green's complaint. It held that the Anti-Discrimination Act could not "constitutionally be extended to cover the flight crew personnel of an interstate air carrier" because it would impose an undue burden upon commerce in violation of Art. I, § 8, cl. 3, of the United States Constitution, which gives Congress power "To regulate Commerce . . . among the several States . . . ," and because the field of law concerning racial discrimination in the interstate operation of carriers is preempted by the Railway Labor Act, [3] the Civil Aeronautics Act of 1938, [4] and Federal Executive Orders. The Supreme Court of Colorado affirmed the judgment of dismissal but discussed only the question of whether the Act as applied placed an undue burden on commerce, concluding that it did. 149 Colo. 259, 368 P. 2d 970 (1962). The obvious importance of even partial invalidation of a state law designed to prevent the discriminatory denial of job opportunities prompted us to grant certiorari. 371 U. S. 809 (1962).

---

[2] The Commission also found that Continental was "guilty of a discriminatory and unfair employment practice in requiring on its application form, the racial identity of the applicant and the requirement of a photo to be attached to the application," contrary to the Commission's regulation.

[3] 44 Stat. 577, as amended, 45 U. S. C. §§ 151–188.

[4] 52 Stat. 973, as amended, 49 U. S. C. (1952 ed.) §§ 401–722, now Federal Aviation Act of 1958, 72 Stat. 731, 49 U. S. C. §§ 1301–1542.

*First.* Continental argues that the State Supreme Court decision rested on an independent and adequate nonfederal ground. For that argument, it relies on the trial court's statement "that the Colorado legislature was not attempting to legislate concerning problems involving interstate commerce" and the statement of the Supreme Court of Colorado that:

> "The only question resolved was that of jurisdiction. The trial court determined that the Act was inapplicable to employees of those engaged in interstate commerce, and the judgment was based exclusively on that ground." 149 Colo., at 265, 368 P. 2d, at 973.

We reject this contention. The trial court itself did not rest on this ground. Instead, it clearly and unequivocally stated that the case presented a constitutional question of whether the Act could legally be applied to interstate operations. Nor did the Supreme Court of Colorado rely on this ground. It interpreted the trial court's opinion as having held that the Act was invalid insofar as it regulated interstate air carriers. The Court further stated that the question was whether the Act could be applied to interstate carriers, which it answered by concluding that under the Federal Constitution the State Legislature had no power to deal with such matters. We are satisfied that the courts below rested their judgments on their interpretation of the United States Constitution and the preemptive effect of federal statutes and Executive Orders.

*Second.* In holding that the Colorado statute imposed an undue burden on commerce, the State Supreme Court relied on the principle, first stated in *Cooley* v. *Board of Wardens of the Port of Philadelphia,* 12 How. 299, that States have no power to act in those areas of interstate commerce which by their nature require uniformity of regulation, even though Congress has not legislated on the

subject.[5]   The State Court read two prior decisions of this Court, *Hall* v. *DeCuir,* 95 U. S. 485 (1878), and *Morgan* v. *Virginia,* 328 U. S. 373 (1946), as having established that the field of racial discrimination by an interstate carrier must be free from diverse state regulation and governed uniformly, if at all, by Congress.   We do not believe those cases stated so encompassing a rule.   The line separating the powers of a State from the exclusive power of Congress is not always distinctly marked; courts must examine closely the facts of each case to determine whether the dangers and hardships of diverse regulation justify foreclosing a State from the exercise of its traditional powers.   This was emphatically pointed out in *Hall* v. *DeCuir, supra,* the very case upon which Continental chiefly relies:

> "Judges not unfrequently differ in their reasons for a decision in which they concur.   Under such circumstances it would be a useless task to undertake to fix an arbitrary rule by which the line must in all cases be located.   It is far better to leave a matter of such delicacy to be settled in each case upon a view of the particular rights involved."   95 U. S., at 488.

The circumstances in *Hall* v. *DeCuir* were that a Louisiana law forbidding carriers to discriminate on account of race or color had been applied so as to hold a steamboat owner liable for damages for assigning a colored passenger to one cabin rather than another.   This was held to violate the Commerce Clause, but only after a careful analysis of the effects of the law on that carrier and its

---

[5] It is not claimed in this case that the Colorado Act discriminated against interstate commerce, see, *e. g., Best & Co.* v. *Maxwell,* 311 U. S. 454 (1940), or that it places a substantial economic burden on Continental, see, *e. g., Bibb* v. *Navajo Freight Lines,* 359 U. S. 520 (1959).

passengers. Among other things, the Court pointed out that if each of the 10 States bordering the Mississippi River were free to regulate the carrier and to provide for its own passengers and freight, the resulting confusion would produce great inconvenience and unnecessary hardships. The Court concluded that:

"Commerce cannot flourish in the midst of such embarrassments. No carrier of passengers can conduct his business with satisfaction to himself, or comfort to those employing him, if on one side of a State line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate. Uniformity in the regulations by which he is to be governed from one end to the other of his route is a necessity in his business . . . ." 95 U. S., at 489.

After the same kind of analysis, the Court in *Morgan* v. *Virginia, supra,* held that a Virginia law requiring segregation of motor carrier passengers, including those on interstate journeys, infringed the Commerce Clause because uniform regulation was essential. The Court emphasized the restriction on the passengers' freedom to choose accommodations and the inconvenience of constantly requiring passengers to shift seats. As in *Hall* v. *DeCuir,* the Court explicitly recognized the absence of any one, sure test for deciding these burden-on-commerce cases. It concluded, however, that the circumstances before it showed that there would be a practical interference with carrier transportation if diverse state laws were permitted to stand. The importance of a particularized inquiry into the existence of a burden on commerce is again illustrated by *Bob-Lo Excursion Co.* v. *Michigan,* 333 U. S. 28 (1948), where the Court had before it a state statute requiring common carriers to serve all people alike regardless of color. The Court upheld the law as applied to steamships

transporting patrons between Michigan and Canada. Following the rule that each case must be adjudged on its particular facts, the Court concluded that neither *Hall* nor *Morgan* was "comparable in its facts, whether in the degree of localization of the commerce· involved; in the attenuating effects, if any, upon the commerce . . . ; or in any actual probability of conflicting regulations by different sovereignties." 333 U. S., at 39.

We are not convinced that commerce will be unduly burdened if Continental is required by Colorado to refrain from racial discrimination in its hiring of pilots in that State. Not only is the hiring within a State of an employee, even for an interstate job, a much more localized matter than the transporting of passengers from State to State [6] but more significantly the threat of diverse and conflicting regulation of hiring practices is virtually nonexistent. In *Hall* and in *Morgan* the Court assumed the validity both of state laws requiring segregation and of state laws forbidding segregation. Were there a possibility that a pilot hired in Colorado could be barred solely because of his color from serving a carrier in another State, then this case might well be controlled by our prior holdings. But under our more recent decisions [7] any state or federal law requiring applicants for any job to be turned away because of their color would be invalid under the Due Process Clause of the Fifth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The kind of burden that was thought possible in the *Hall* and *Morgan* cases, therefore, simply cannot exist here. It is, of course, possible that States could impose such onerous, harassing, and con-

---

[6] See, *e. g., California* v. *Thompson,* 313 U. S. 109 (1941); *Erie R. Co.* v. *Williams,* 233 U. S. 685 (1914).

[7] *E. g., Brown* v. *Board of Education,* 347 U. S. 483 (1954); *Bolling* v. *Sharpe,* 347 U. S. 497 (1954); *Bailey* v. *Patterson,* 369 U. S. 31 (1962).

flicting conditions on an interstate carrier's hiring of employees that the burden would hamper the carrier's satisfactory performance of its functions. But that is not this case. We hold that the Colorado statute as applied here to prevent discrimination in hiring on account of race does not impose a constitutionally prohibited burden upon interstate commerce.

*Third.* Continental argues that federal law has so pervasively covered the field of protecting people in interstate commerce from racial discrimination that the States are barred from enacting legislation in this field. It is not contended, however, that the Colorado statute is in direct conflict with federal law,[8] that it denies rights granted by Congress,[9] or that it stands as an obstacle to the full effectiveness of a federal statute.[10] Rather Continental argues that:

> "When Congress has taken the particular subject-matter in hand coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go farther than Congress has seen fit to go."[11]

But this Court has also said that the mere "fact of identity does not mean the automatic invalidity of state measures."[12] To hold that a state statute identical in purpose with a federal statute is invalid under the Supremacy Clause, we must be able to conclude that the purpose of the federal statute would to some extent be frustrated by the state statute. We can reach no such conclusion here.

---

[8] See *McDermott* v. *Wisconsin,* 228 U. S. 115 (1913).

[9] See, *e. g., United Mine Workers* v. *Arkansas Oak Flooring Co.,* 351 U. S. 62 (1956).

[10] See, *e. g., Hill* v. *Florida,* 325 U. S. 538 (1945); *Hines* v. *Davidowitz,* 312 U. S. 52 (1941).

[11] *Charleston & W. C. R. Co.* v. *Varnville Furniture Co.,* 237 U. S. 597, 604 (1915).

[12] *California* v. *Zook,* 336 U. S. 725, 730 (1949).

Continental relies first on the Civil Aeronautics Act of 1938,[13] now the Federal Aviation Act of 1958,[14] and its broad general provisions forbidding air carriers to subject any particular person to "any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever" [15] and requiring "The promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices . . . ." [16] This is a familiar type of regulation, aimed primarily at rate discrimination injurious to shippers, competitors, and localities.[17] But we may assume, for present purposes, that these provisions prohibit racial discrimination against passengers and other customers [18] and that they protect job applicants or employees from discrimination on account of race. The Civil Aeronautics Board and the Administrator of the Federal Aviation Agency have indeed broad authority over flight crews of air carriers,[19] much of which has been exercised by regulations.[20] Notwithstanding this broad authority, we are satisfied that Congress in the Civil Aeronautics Act of 1938 and its successor had no express or

---

[13] 52 Stat. 973, as amended, 49 U. S. C. (1952 ed.) §§ 401–722.

[14] The Civil Aeronautics Act of 1938 was substantially reenacted by the Federal Aviation Act of 1958, 72 Stat. 731, 49 U. S. C. §§ 1301–1542. Some of the powers and duties of the Civil Aeronautics Board were transferred to the Administrator of the Federal Aviation Agency.

[15] 49 U. S. C. (1952 ed.) § 484 (b), now 49 U. S. C. § 1374 (b).

[16] 49 U. S. C. (1952 ed.) § 402 (c), now 49 U. S. C. § 1302 (c).

[17] Compare Interstate Commerce Act § 3 (1), 49 U. S. C. § 3 (1).

[18] See *Fitzgerald* v. *Pan American World Airways,* 229 F. 2d 499 (C. A. 2d Cir. 1956); *United States* v. *City of Montgomery,* 201 F. Supp. 590 (M. D. Ala. 1962); cf. *Henderson* v. *United States,* 339 U. S. 816 (1950); *Mitchell* v. *United States,* 313 U. S. 80 (1941).

[19] See 49 U. S. C. (1952 ed.) §§ 552, 559, now 49 U. S. C. §§ 1422, 1429.

[20] See, *e. g.,* 14 CFR §§ 20.40, 20.42–20.45, 20.121, 21.1, 40.300.

implied intent to bar state legislation in this field and that the Colorado statute, at least so long as any power the Civil Aeronautics Board may have remains "dormant and unexercised," [21] will not frustrate any part of the purpose of the federal legislation.[22]

There is even less reason to say that Congress, in passing the Railway Labor Act [23] and making certain of its provisions applicable to air carriers, intended to bar States from protecting employees against racial discrimination. No provision in the Act even mentions discrimination in hiring. It is true that in several cases we have held that the exclusive bargaining agents authorized by the Act must not use their powers to discriminate against minority groups whom they are supposed to represent.[24] And we have held that employers too may be enjoined from carrying out provisions of a discriminatory bargaining agreement.[25] But the duty the Act imposes is one of fair representation and it is imposed upon the union. The employer is merely prohibited from aiding the union in breaching its duty. Nothing in the Railway Labor Act or in our cases suggests that the Act places upon an air carrier a duty to engage only in fair nondiscriminatory hiring practices. The Act has never been used for that purpose, and we cannot hold it bars Colorado's Anti-Discrimination Act.

---

[21] *Bethlehem Steel Co.* v. *New York State Labor Rel. Bd.,* 330 U. S. 767, 775 (1947). See *Parker* v. *Brown,* 317 U. S. 341 (1943); *H. P. Welch Co.* v. *New Hampshire,* 306 U. S. 79 (1939).

[22] If the federal authorities seek to deal with discrimination in hiring practices and their power to do so is upheld, that would raise questions not presented here. Compare *California* v. *Thompson,* 313 U. S. 109 (1941), with *California* v. *Zook,* 336 U. S. 725 (1949).

[23] 44 Stat. 577, as amended, 45 U. S. C. §§ 151–188.

[24] See, *e. g., Conley* v. *Gibson,* 355 U. S. 41 (1957); *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192 (1944).

[25] See, *e. g., Brotherhood of R. Trainmen* v. *Howard,* 343 U. S. 768, 775 (1952).

Finally, we reject the argument that Colorado's Anti-Discrimination Act cannot constitutionally be enforced because of Executive Orders requiring government contracting agencies to include in their contracts clauses by which contractors agree not to discriminate against employees or applicants because of their race, religion, color, or national origin.[26] The District Court purported to take judicial notice that "a certificated commercial carrier by air [such as respondent] is obligated to and in fact does transport United States mail under contract with the United States Government." The Government answers that in fact it has no contract with Continental and that, while 49 U. S. C. § 1375 requires air lines to carry mail, it does not forbid discrimination on account of race or compel the execution of a contract subject to Executive Orders. We do not rest on this ground alone, however, nor do we reach the question of whether an Executive Order can foreclose state legislation. It is impossible for us to believe that the Executive intended for its orders to regulate air carrier discrimination among employees so pervasively as to preempt state legislation intended to accomplish the same purpose.

The judgment of the Supreme Court of Colorado is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[26] Executive Order No. 10479, 18 Fed. Reg. 4899 (Aug. 13, 1953), Executive Order No. 10557, 19 Fed. Reg. 5655 (Sept. 3, 1954), both revoked and superseded by Executive Order No. 10925, 26 Fed. Reg. 1977 (Mar. 6, 1961).