**NATIONAL ASSOCIATION OF REGULATORY UTILITY COMMISSIONERS et al., Plaintiffs,**

v.

**William T. COLEMAN, Jr., Individually and as Secretary of Transportation of the United States of America and Asaph H. Hall, Individually and as Acting Administrator of the Federal Railroad Administration, Department of Transportation, Defendants.**

**Civ. No. 74–1258.**

United States District Court,
M. D. Pennsylvania.

Sept. 4, 1975.

As Amended Oct 22, 1975.

Paul Rodgers, Gen. Counsel, Sumner J. Katz, Asst. Gen. Counsel, Washington, D. C., for plaintiff National Assn. of Regulatory Utility Commissioners.

Robert P. Kane, Atty. Gen. of Pa., Harrisburg, Pa., Gordon P. MacDougall, Sp. Asst. Atty. Gen., Washington, D. C., Peter W. Brown, Counsel, John B. Wilson, Asst. Counsel, Pa. Public Utility Commission, Harrisburg, Pa., for plaintiffs Com. of Pa. and Pa. Public Utility Commission.

S. John Cottone, U. S. Atty., Laurence Kelly, Asst. U. S. Atty., Scranton, Pa., Donald W. Bennett, Chief Counsel, J. Thomas Furphy, Asst. Chief Counsel, Thomas C. Barbour, Federal Railroad Administration, Dept. of Transportation, Washington, D. C., for defendants.

Darrell W. Harp, Asst. Commissioner for Legal Affairs, John C. McTiernan, Michael D. McDonald, Asst. Counsel, New York State Dept. of Transportation, Albany, N. Y., for intervenor Dept. of Transportation of the State of N. Y.

SHERIDAN, Chief Judge.

█ Plaintiffs—The Pennsylvania Public Utility Commission (PUC), the Commonwealth of Pennsylvania, the National Association of Regulatory Utility Commissioners (NARUC), and the Department of Transportation of the State of New York[1]—filed this action requesting the court to declare invalid and to enjoin the enforcement of 39 Fed.Reg. § 225.1 (1974) promulgated by the Federal Railroad Administration (FRA), an agency within the United States Department of Transporation,[2] to the extent Section 225.1 preempts state laws which require railroad accident reporting. Specifically, plaintiffs request the court to enjoin the fourth sentence of Section 225.1, which reads as follows: "Issuance of these regulations under the Federal Railroad Safety Act preempts States from prescribing accident/incident reporting requirements." Federal jurisdiction is properly predicated upon 45 U.S.C.A. § 431(f), 5 U.S.C.A. §§ 701–706,[3] 28 U.S.C.A. § 1337, and 49 U.S.C.A. §§ 1653, 1655(f)(3)(A), (C).

The issue for resolution is whether the Federal Railroad Safety Act, 45 U. S.C.A. § 421 et seq., specifically, 45 U. S.C.A. § 434, empowers the federal government to preempt the states with respect to railroad accident reporting requirements. The FRA has promulgated nationally uniform requirements as to the information railroads must provide in monthly reports with respect to railroad accidents, and copies of these reports are available to the states and their regulatory agencies.

█ The PUC and the Commonwealth of Pennsylvania filed a motion to convene a three-judge court which this court denied. A case which involves preemption, though grounded in the supremacy clause of the Constitution, does not require convocation of a three-judge court. *Swift & Co. v. Wickham,* 1965, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194. In addition, although a challenge to a regulation which the FRA had pro-

---

1. The New York Department of Transportation was permitted to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

2. Claude S. Brinegar has resigned his office and hence is no longer Secretary of the Department of Transportation. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, his successor, William T. Coleman, Jr., is automatically substituted as a defendant.

3. The Court of Appeals for the Third Circuit has consistently held that the Administrative Procedure Act does not provide an independent basis for jurisdiction. *Grant v. Hogan,* 3 Cir. 1974, 505 F.2d 1220; *Zimmerman v. United States,* 3 Cir. 1970, 422 F.2d 326. In the case *sub judice,* this court has jurisdiction under the A.P.A. because judicial review as provided for in the A.P.A. of any final agency action undertaken pursuant to the Federal Railroad Safety Act of 1970 is authorized by 45 U.S.C.A. § 431(f).

mulgated solely pursuant to its authority under the Accident Reports Act, 45 U.S. C.A. §§ 36–38, the functions and powers under these sections having been transferred from the Interstate Commerce Commission to the Secretary of the Department of Transportation by 49 U.S. C.A. §§ 1655(e)(1)(I), (e)(1)(K), would require convocation of a three-judge court pursuant to 49 U.S.C.A. § 1653(c) and 28 U.S.C.A. § 2325 (the latter section has been repealed but this action was filed before the repeal became effective, *see* 1974 U.S.Code Cong. & Admin.News, pp. 6907–6908; 8147–8165), the regulation under challenge here clearly was promulgated pursuant to the Federal Railroad Safety Act, 45 U.S.C.A. § 421. et seq., specifically 45 U. S.C.A. §§ 434, 437, not under the Accident Reports Act, and therefore convocation of a three-judge court is not warranted.[4]

■■■ The exercise of federal supremacy is not lightly to be presumed. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 1973, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348; *New York State Department of Social Services v. Dublino*, 1973, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688; *Goldstein v. California*, 1973, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163; *City of Burbank v. Lockheed Air Terminal, Inc.*, 1973, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547; *Evansville Airport v. Delta Airlines*, 1972, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620; *cf. Kewanee Oil Co. v. Bicron Corp.*, 1974, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315; *Fry v. United States*, 1975, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363. These most recent decisions of the Supreme Court suggest that where Congress has not made clear its intention to preempt or where the con-

flict is only a potential one or peripheral to the purpose of the federal statute, state legislation will be allowed to stand. *See* Note, The Preemption Doctrine: Shifting Perspectives On Federalism And The Burger Court, 75 Columbia Law Review 623 (1975). Federal regulation of a field of commerce should not be deemed preemptive of state regulatory power unless the nature of the regulated subject matter permits no other conclusion or Congress has unmistakably so ordained. *Florida Lime & Avocado Growers, Inc. v. Paul*, 1963, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248; *Huron Portland Cement Co. v. City of Detroit*, 1960, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852; *San Diego Building Trades Council v. Garmon*, 1959, 359 U. S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. The Supreme Court in certain contexts has resolved the preemption issue on the basis of whether a state enactment frustrates any part of the purpose of the federal legislation. *Perez v. Campbell*, 1971, 402 U.S. 637, 91 S.Ct. 1704, 29 L. Ed.2d 233; *Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc.*, 1963, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84; *Rice v. Board of Trade*, 1947, 331 U.S. 247, 67 S.Ct. 1160, 91 S.Ct. 1468; *Hines v. Davidowitz*, 1941, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581. While "prior cases on preemption are not precise guidelines," because "each case turns on the peculiarities and special features of the federal regulatory scheme in question," *City of Burbank v. Lockheed Air Terminal*, 411 U.S. at 638, 93 S.Ct. at 1862, it is clear that federal preemption is not lightly to be presumed, but where there is a pervasive and comprehensive scheme of federal regulation, particularly when the subject is one traditionally committed to federal regulation, state enactments which stand as a major obstacle to the accomplishment of Congressional objectives are invalid.

---

4. 39 Fed.Reg. § 225.1 (1974) states in pertinent part: "Issuance of these regulations under the *Federal Railroad Safety Act*

preempts States from prescribing accident/incident reporting requirements." (Emphasis supplied.)

Section 225.1 was promulgated by the FRA pursuant to 45 U.S.C.A. § 434 which states:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

Plaintiffs assert that Congress intended that the regulatory framework of existing state rail safety statutes would be left intact by the Federal Railroad Safety Act and that the power of states to require accident reports is a necessary and reasonable complement to their continuing responsibilities in the railroad safety area. These contentions, however, are supported neither by the statutory language nor the legislative history of the Act.

The language of 45 U.S.C.A. § 434 clearly supports the conclusion that the ultimate goal of the Act is to establish nationally *uniform* control of railroad safety. *Donelson v. New Orleans Terminal Company*, 5 Cir. 1973, 474 F.2d 1108. Section 434 permits a state to adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety *only until* such time as the Secretary of Transportation —i. e., the FRA—adopts a rule, regulation, order, or standard covering the same subject matter. In the instant case the FRA has promulgated accident reporting requirements and thus state requirements on this same subject can no longer be enforced. Plaintiffs do not contend, nor could they, that their accident reporting requirements are directed at eliminating or reducing an essentially *local* safety hazard. Moreover, even state laws directed at essentially local safety hazards are permissible under Section 434 only if the state law is not incompatible with any federal measure and does not unduly burden interstate commerce. Once the FRA has promulgated regulations with respect to a certain subject matter, as with railroad accident reporting in the case *sub judice*, the federal government has effectively occupied the field with respect to that subject and the states can play only a *limited* role participating with the federal government in the enforcement of *federal* regulations, and then only when a state agency is properly certified, *see* 45 U.S.C.A. § 435. In addition, 45 U.S.C.A. § 436 gives the states the right to initiate an action in *federal* court to enforce a *federal* regulation when the Secretary of Transportation has failed to act, but the state can file such an action *only if* the Secretary has not "affirmatively determined, in writing, that no violation [of federal regulations] has occurred." 45 U.S.C.A. § 436.

In view of the regulatory scheme established in the aforementioned sections of the Federal Railroad Safety Act and the specific statutory language of Section 434, it is apparent that one of the primary objectives of the Act is to establish a *nationally uniform* system of regulation in the rail safety field. Congress viewed the multiplicity of state regulations as not being conducive to railroad safety *and,* equally important, as unduly burdening interstate commerce by subjecting the railroads to fifty different sets of regulations dealing with rail safety.

The legislative history as well as the statutory language evidences a total preemptive intent.

*"The committee does not believe that safety in the Nation's railroads would be advanced sufficiently by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems. Accordingly, while it has preserved the framework of certification, it has modified the concept insofar as it applies to the Nation's rail system to make all enforcement Federal in nature. . . .*

*"* *. . .*

"With the exception of industrial or plant railroads, the railroad industry has very few local characteristics. Rather, in terms of its operations, it has a truly interstate character calling for a uniform body of regulation and enforcement. It is a national system. . . . The integral operating parts of these companies cross many State lines. In addition to the obvious areas of rolling stock and employees, such elements as operating rules, signal systems, power supply systems, and communication systems of a single company normally cross numerous State lines. *To subject a carrier to enforcement before a number of different State administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce.*

"* *. . .*

"Section 205 of the bill declares *that it is the policy of Congress that rail safety regulations be nationally uniform to the extent practicable.* It provides, however, that until the Secretary acts with respect to a particular subject matter, a State may continue to regulate in that area. Once the Secretary has prescribed a uniform national standard the State would no longer have authority to establish Statewide standards with respect to rail safety. The State may, however, adopt or continue in force an additional or more stringent requirement when necessary to eliminate or reduce an essentially local safety haz-

ard, provided it is not incompatible with Federal requirements and does not create an undue burden on interstate commerce.

"The purpose of this latter provision is to enable the States to respond to local situations not capable of being adequately encompassed within uniform national standards. The States will retain authority to regulate individual local problems where necessary to eliminate or reduce essentially local railroad safety hazards. Since these local hazards would not be Statewide in character, *there is no intent to permit a State to establish statewide standards superimposed on national standards covering the same subject matter.*" 1970 U.S.Code Cong. & Admin.News, pp. 4109, 4110, 4111, 4116, 4117. (Emphasis supplied.)

This court holds that the Federal Railroad Safety Act empowers the FRA to preempt state railroad accident reporting requirements by promulgating nationally uniform accident reporting rules, and hence 39 Fed.Reg. § 225.1 is valid.

 Plaintiffs assert that since it was the intent of Congress in enacting the Federal Railroad Safety Act that existing *federal* legislation in the field of railroad safety, including the 1910 Accident Reports Act, continue to be administered and enforocd as if this new statute had not been enacted and that the new Act be effected in concert with the existing regulatory framework, the FRA cannot preempt the *states* with respect to accident reporting requirements. This argument is untenable. The legislative history simply indicates that Congress in enacting the Federal Railroad Safety Act did not intend to repeal or limit any of the *federal government's* then existing power under other federal statutes to regulate railroad safety but rather intended to supplement that power. There is no evidence that Congress intended that the new authority given the federal government by the Federal Railroad Safety Act could not be utilized

to expand the federal government's regulation of rail safety in areas it already possessed some limited power. The language of 45 U.S.C.A. § 434 and its legislative history conclusively rebut any such argument. The legislative history relied on by plaintiffs supports the proposition that the federal government is empowered to issue regulations under the new Act *and* all previous federal enactments and that the Federal Railroad Safety Act does not *limit* in any manner the federal government's power to regulate rail safety contained in previous enactments; the legislative history does not support the converse proposition that pre-existing statutes, such as the 1910 Accident Reports Act, limit the federal government's power to regulate under the 1970 Federal Railroad Safety Act. Furthermore, the 1910 Accident Reports Act does not guarantee to the states the right to establish railroad accident reporting requirements and hence the preemption of the states from this role under the Federal Railroad Safety Act does not contravene the Accident Reports Act.

In enacting the Federal Railroad Safety Act Congress was concerned not only with railroad safety, with respect to which Congress adopted the view that a nationally uniform system of regulation was more conducive to railroad safety than permitting each state to enact its own safety standards, but Congress was also concerned with the burdening of interstate commerce by subjecting the railroads to fifty different sets of regulations. Hence Congress empowered the federal government to establish a *nationally uniform* system of regulation of railroad safety, a goal attainable only by preemption of state requirements.

The court notes that the *wisdom* of either Congress' decision to enact the Federal Railroad Safety Act empowering the FRA to preempt the states in the field of rail safety or the *wisdom* of the FRA's decision to promulgate federal railroad accident reporting regulations which preempt state accident reporting requirements is not the issue

here. The FRA's decision to preempt the states in the field of railroad accident reporting without first preempting the states *completely* with respect to substantive safety standards appears to the court to be putting the cart before the horse since each state's own safety regulations with respect to a given subject matter remain in effect *until* the FRA promulgates its standards on the same subject matter. Logically, the FRA should first preempt the states in *all* areas of railroad safety, pursuant to 45 U.S.C.A. § 434, and then preempt the states' railroad accident reporting requirements because it is possible that the states, to enforce their own safety standards with respect to subject matters the FRA has not yet promulgated its standards, need different information than the federal government presently needs to enforce its less than comprehensive regulations. Nevertheless, this court only has the power to decide whether the FRA has the authority under the Federal Railroad Safety Act to preempt state railroad accident reporting requirements, and the question of whether the FRA has exercised its authority wisely is beyond the permissible scope of review of the federal courts.

In summary, the Federal Railroad Safety Act, particularly 45 U.S.C.A. § 434, empowers the FRA to occupy the field of railroad safety, as evidenced by the pervasiveness of federal regulation provided for in the Act. The Act gives the FRA the power to decide what information the railroads must provide with respect to railroad accidents for purposes of furthering rail safety and to establish nationally uniform requirements with respect to the reporting of such information, thereby preempting the states and preventing them from superimposing their own requirements on the national standards for this purpose.

Plaintiffs' request for injunctive relief will be denied.

The foregoing shall constitute the court's findings of fact and conclusions of law.