689 F.2d 387
 25 Wage & Hour Cas. (BN 1030, 95 Lab.Cas. P 34,262
 DUBOFF ELECTRIC, INC., Plaintiff-Appellant,
v.
Harrison J. GOLDIN, individually, and as Comptroller of the
City of New York, Sherwin E. Weiss, Joseph Napolitano,
Thomas Van Arsdale, individually, and as President of Local
3 of the International Brotherhood of Electrical Workers,
and Bernard Rosenberg, individually, and as a Business Agent
of Local 3 of the International Brotherhood of Electrical
Workers, Defendants-Appellees.
 No. 1114, Docket 82-7039.
 United States Court of Appeals,
Second Circuit.
 Argued May 17, 1982.
Decided Sept. 27, 1982.
 
 Morris Weissberg, New York City (N. George Turchin, New York City, on the brief), for plaintiff-appellant.
 Dody Schorr, Asst. Corp. Counsel, New York City (F.A.O. Schwartz, Jr., Corp. Counsel, New York City, on the brief), for defendants-appellees.
 Before WATERMAN, VAN GRAAFEILAND and KEARSE, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Duboff Electric, Inc. appeals from an order and judgment of the United States District Court for the Southern District of New York, Griesa, J., which denied its motion for a preliminary injunction and granted defendants' motion to dismiss the complaint for failure to state a valid claim. We affirm the denial of the preliminary injunction but reverse the dismissal of the complaint and remand to the district court in order that there may be a further and more accurate development of the facts.
 
 
 2
 Appellant, an electrical contractor, was the lowest bidder on contracts No. 78-4153 and 78-4154, awarded by the New York City Housing Authority. Because the housing project involved was federally funded, both the Davis-Bacon Act, 40 U.S.C. §§ 276a-276a-5, and section 220 of New York Labor Law, 30 McKinney's, were applicable. Both statutes require in substance that employees of public construction contractors must be paid at the wage rate prevailing in the locality. For present purposes, we are concerned only with the provisions of the New York statute.
 
 
 3
 Sections 220(3) and (5) provide that the rate of wage on public work contracts shall be not less than the rate of wage paid in the locality to the majority of workers in the same trade or occupation. Such contracts also must provide for the payment of wage supplements prevalent in the community, which include, but are not limited to, "health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay and life insurance", § 220(5)(b). The appropriate fiscal officer, in this case the Comptroller, must determine the schedules of wages and supplements prior to advertising for bids, and the schedules thereafter form part of the specifications for the work, § 220(3). Any contractor who willfully pays less than the established scale of wages and supplements is guilty of a misdemeanor, id.
 
 
 4
 The "Prevailing Wage Schedule" for the contracts here at issue provided for a base rate of $12.85 per hour for electrical workers. Under "Supplemental Benefits" the Schedule read as follows:
 
 
 5
 $8.00 per day AF; Apprentice Ratio 1-3;
 
 
 6
 $ .064 EF; Employee's Full SS; 7 hour day;
 
 
 7
 $ .032 JIB Assessment; $ .3855 NEBF,
 
 
 8
 $ .8995 PF; 9PH; $ .771 VF
 
 
 9
 We assume that "AF" means "Annuity Fund", "EF" means "Education Fund", "SS" means "Social Security", "JIB" means "Joint Industry Board", "NEBF" means "National Electric Benefit Fund", "PF" means "Pension Fund", and "VF" means "Vacation Fund". We are unable to determine what "PH" stands for.
 
 
 10
 On March 4, 1980, appellee Goldin served appellant with a notice that a hearing would be held to determine whether appellant had violated section 220 as alleged in a complaint attached to the notice. The complaint alleged that appellant had violated section 220 by failing to pay prevailing wages and supplements to four named employees, the total overall underpayment being in the amount $11,527.18. On March 31, 1980, Goldin served a notice of an adjourned hearing with attached complaint, which stated that appellant had failed to provide the same four named employees the following prevailing supplemental benefits:
 
 
 11
 (a) Annuity Fund
 
 
 12
 (b) Additional Security Benefit Fund
 
 
 13
 (c) Educational Fund
 
 
 14
 (d) Joint Industry Board Fund
 
 
 15
 (e) National Electric Benefit Fund
 
 
 16
 (f) Pension Fund
 
 
 17
 (g) Vacation Fund
 
 
 18
 The hearing officer's report, which followed the hearing, is not a model of clarity. His ultimate finding, however, was that, as to the four named employees, appellant "did not provide supplemental benefits as intended by the Labor Law and enumerated in the Comptroller's Wage Schedule." The hearing officer recommended that the Comptroller find appellant in wilful violation of section 220 "in that it failed to pay its employees the prevailing fringe benefits on the contract in evidence."
 
 
 19
 Thereafter, the Comptroller adopted the hearing officer's findings and determined that appellant "failed to provide the prevailing supplemental benefits to its employees." He also ordered that a hearing be "convened forthwith in order to determine the monetary value of the wilful violation." There the administrative record ends.
 
 
 20
 In dismissing the complaint for failure to state a claim, the district court held that the administrative decisions did not require appellant, a non-union employer, to make payments into the Joint Industry Board Fund, the National Electric Benefit Fund, and the Educational Fund. Our reading of the above quoted pertinent portions of the hearing officer's report and the Comptroller's order leads us to a different conclusion. If, as the prevailing Wage Schedule provides, appellant is required to pay $ .032 for a Joint Industry Board assessment and $ .3855 for a National Electric Benefit Fund and is forbidden from paying these amounts to its employees, it would seem that the Joint Industry Board and the National Electric Benefit Fund are the only alternative payees. See Matter of Gottlieb Contracting, Inc. v. Beame, 41 Misc.2d 1097, 247 N.Y.S.2d 237 (1964). At the very least, we believe that more proof is required on this issue than is presently before us.
 
 
 21
 The district court also stated that "(i)n addition to directing future compliance, the hearing officer ruled that the Housing Authority should withhold $11,527.18 from payments due to plaintiff in order to cover plaintiff's past defaults on its obligations." At oral argument, we questioned counsel as to how this figure was arrived at. After some investigation, the parties agreed that the $11,527.18 was withheld in connection with contracts that are not even involved in this litigation.
 
 
 22
 Before we can properly evaluate the possibility that appellee Goldin's interpretation of section 220 violated the Sherman Act or that appellant's compliance with Goldin's rulings would put it in violation of section 8 of the National Labor Relations Act, 29 U.S.C. § 158 or section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, we need more accurate and complete information than is presently in the record. See Gladstone v. Fireman's Fund Insurance Co., 536 F.2d 1403, 1406-07 (2d Cir. 1976). The judgment and that portion of the district court's order which granted defendant's motion to dismiss are reversed, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 23
 Appellant has failed to establish its entitlement to a preliminary injunction. That portion of the district court's order is affirmed.
 
 
 24
 No costs to either party.
 
 
 25
 KEARSE, Circuit Judge, concurring in part and dissenting in part:
 
 
 26
 I respectfully dissent from so much of the majority's decision as reverses the judgment dismissing the complaint.
 
 
 27
 Duboff Electric, Inc. ("Duboff"), an electrical contractor, commenced the present action in the district court to challenge rulings by officials of the City of New York (the "City") that Duboff had not complied with § 220 of the New York Labor Law (McKinney 1965 & Supp. 1981-1982). Section 220 requires, inter alia, that public construction contractors make contributions to benefit plans for their employees and provides that payments to employees of cash allowances in lieu of contributions to benefit plans do not satisfy § 220. Duboff, which has made cash payments instead of benefit plan contributions, challenges § 220 on three federal grounds: (1) that § 220 is preempted by the Davis-Bacon Act, 40 U.S.C. §§ 276a to 276a-5 (1976), which permits such cash payment substitutions; (2) that the City's enforcement of § 220 against Duboff at the behest of labor unions constitutes a restraint of trade in violation of the federal antitrust laws, 15 U.S.C. §§ 1 et seq. (1976); and (3) that § 220 deprives Duboff of its Fourteenth Amendment rights to substantive due process and equal protection of the law. I would affirm the district court's dismissal of the complaint because I believe these claims are insufficient as a matter of law.
 
 
 28
 (1) I see no merit in Duboff's claim that New York's Labor Law § 220 is preempted by the Davis-Bacon Act, 40 U.S.C. § 276a. A state law is not preempted by federal law simply because it is not the same as the federal law; rather it must "stand( ) as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); see Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 141-142, 83 S.Ct. 1210, 1216-1217, 10 L.Ed.2d 248 (1963); Colorado Anti-Discrimination Commission v. Continental Air Lines, 372 U.S. 714, 722, 83 S.Ct. 1022, 1026, 10 L.Ed.2d 84 (1963). Section 220 would conflict with federal law only if Congress had intended to protect employers by allowing them to pay cash in lieu of benefits. It is clear however, as the district court observed in rejecting Duboff's claim, that the Davis-Bacon Act is designed to protect workers, not employers. Walsh v. Schlecht, 429 U.S. 401, 411, 97 S.Ct. 679, 686, 50 L.Ed.2d 641 (1977). Accordingly, New York's greater protection for workers is not preempted by Davis-Bacon.
 
 
 29
 (2) The requirements of which Duboff complains are provisions of New York State's Labor Law, which plainly reflects state policy and is supervised by persons so authorized by that law. See, e.g., § 220(5)(e). Duboff's antitrust claims are thus barred by the doctrine of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), which provides that a state's imposition of anticompetitive restraints "as an act of government," id. at 352, 63 S.Ct. at 314, establishes antitrust immunity for persons carrying out the state's program. See also New Motor Vehicle Board v. Orrin W. Fox Co., 439 U.S. 96, 109, 99 S.Ct. 403, 411-412, 58 L.Ed.2d 361 (1978); Bates v. State Bar, 433 U.S. 350, 359-60, 97 S.Ct. 2691, 2696-2697, 53 L.Ed.2d 810 (1977).
 
 
 30
 (3) Finally I see no possibility that Duboff can prevail on its claim that § 220 deprives it of equal protection and substantive due process. "The day is gone when (the federal court) uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." Williamson v. Lee Optical, Inc., 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). The equal protection theory is no more viable. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369.... 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426 (81 S.Ct. 1101, 1105, 6 L.Ed.2d 393)." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).
 
 
 31
 Finding that each of the federal doctrines invoked by Duboff is unavailing to it, I would affirm the judgment of dismissal.