513 A.2d 579

Carolina Freight Carriers, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued November 13, 1985, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*William J. Flannery,* with him, *Francis M. Milone* and *Robert W. Smith,* Of Counsel: *Morgan, Lewis & Bockius,* for petitioner.

*G. Thompson Bell,* Assistant General Counsel, with him, *Elisabeth S. Shuster,* General Counsel, for respondent.

OPINION BY JUDGE DOYLE, August 5, 1986:

This is an appeal by Carolina Freight Carriers (Carolina) from an order of the Pennsylvania Human Relations Commission (Commission) which adopted the findings of fact, opinion, and conclusions of law recom-

mended by a hearing panel which determined that Carolina had, by refusing to hire two road drivers, discriminated against them in violation of Section 5 of the Pennsylvania Human Relations Act[1] (Act).

The facts are substantially agreed upon. On August 6, 1980 William R. Birch and Rollin R. Lewis applied for employment with Carolina as road drivers assigned to Carolina's terminal in Carlisle, Pennsylvania. The road driver position entails driving a tractor trailer from terminal to terminal through multiple states. Road drivers must be both physically and mentally able to operate safely a motor vehicle despite unfavorable weather or traffic conditions. Drivers must also be capable of delivering and unloading freight.

Approximately five weeks after submitting their applications, both Birch and Lewis were sent to Ritzman Associates, an association of physicians, for spinal x-rays. This procedure constitutes part of Carolina's physical examination process. Although the Commission made no specific finding, it is apparently undisputed that Dr. Harhigh, the examining physician, was instructed to examine Birch and Lewis to determine whether they were medically qualified under federal Department of Transportation (FED DOT) regulations to be drivers. It is also undisputed that Carolina had no medical qualifications of its own which were independent of the federal qualifications.

Upon conducting the medical examinations Dr. Harhigh discovered that both men had a number of osteophytes or "bony spurs" on the vertabrae of the lower back which, according to the doctor's testimony, could, under continuous jarring of the spine, interfere with the nerves leaving the spinal area and cause impairment in the functioning of the legs. Accordingly, Dr. Harhigh

---

[1] Act of October 27, 1955, P.L. 744, *as amended*.

determined that the applicants were medically unqualified pursuant to FED DOT Regulation 391.41, 49 C.F.R. §391.41, which states in pertinent part:

*Physical qualifications for drivers*

(a) A person shall not drive a motor vehicle unless he is physically qualified to do so and, except as provided in §391.67, has on his person the original, or a photographic copy, of a medical examiner's certificate that he is physically qualified to drive a motor vehicle.

(b) A person is physically qualified to drive a motor vehicle if that person—

(7) Has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease *which interferes with his ability to control or operate a motor vehicle safely;*

(8) Has no established medical history or clinical diagnosis of epilepsy or any other condition *which is likely to cause loss of consciousness or any loss of ability to control a motor vehicle.*

. . . (Emphasis added.)

It is stipulated that Carolina refused to hire Birch and Lewis solely because of their failure to meet these physical qualifications. Subsequent to their rejections Birch and Lewis filed complaints with the Commission alleging discrimination based upon non job-related handicaps or disabilities.

The Commission determined first that its jurisdiction over this case was not pre-empted by the federal scheme. It then reached the merits and held that both applicants were handicapped or disabled within the meaning of the Act. Next it considered whether the handicaps were job-related. Under Section 4(p) of the Act, a handicap or disability is by definition not job-related when it "does not substantially interfere with

the ability to perform the essential functions of employment which the handicapped person applies for, is engaged in, or has been engaged in." 43 P.S. §954(p). Furthermore, Commission Regulation 44.4, 16 Pa. Code §44.4, provides in pertinent part:

> *Non-job-related handicap or disability*—Includes the following:
>
> (i) Any handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in, or has been engaged in. Uninsurability or increased cost of insurance under a group or employe insurance plan does not render a handicap or disability job-related.
>
> (ii) A handicap or disability is not job-related merely because the job may pose a threat of harm to the employe or applicant with the handicap or disability unless the threat is one of demonstrable and serious harm.
>
> (iii) A handicap or disability may be job-related if placing the handicapped or disabled employe or applicant in the job would pose a demonstrable threat to the health and safety of others.

Based upon Section 4(p) and Regulation 44.4, the Commission determined that nothing in the record suggested that in August of 1980 either driver was unable to perform the duties of a truck driver and that at best the record reflected only the possibility of future harm. This conclusion stemmed from the Commission's determination that Dr. Harhigh's testimony "about both the likelihood and the severity of [a] leg impairment was inconclusive and unpersuasive." The Commission also rejected the idea that possession of a medical certificate pursuant to the federal regulations was a *bona fide* occupational qualification. It thus held that Carolina had

discriminated against Birch and Lewis in violation of Section 5 of the Act. In fashioning a remedy the Commission ordered Carolina (1) to hire the two applicants for the next available positions (2) to grant them retroactive seniority and (3) to pay them back wages plus interest.

Carolina petitioned for review of this order and on appeal here asserts (1) that the Commission erred in determining that it was not pre-empted by federal law (2) that Carolina's requirement that a driver be qualified under FED DOT Regulations is a *bona fide* occupational qualification (3) that the Commission computed the amount of damages erroneously. Because we agree that the Commission was pre-empted by federal law, we need not reach Carolina's alternative arguments.

We begin by reviewing the principles of law applicable to the doctrine of pre-emption. "If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). The intent to occupy a field may be "explicitly stated in the [federal] statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). When there is no explicit pre-emptive language, an intent to pre-empt can be inferred where (1) the federal scheme of regulation is so pervasive as to create a reasonable inference that Congress left no room for the states to supplement the law in the area or (2) the federal law pertains to an area in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state law on the same subject" or (3) the goal to be obtained by the federal law and "the character of obligations imposed by it may reveal the same purpose." *Fidelity Federal Savings and Loan Association v. De La Cuesta*, 458 U.S. 141, 153 (1982) (citing and quoting

from *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Additionally, the doctrine of pre-emption applies whether the federal law is in the form of a statute or a regulation. *Fidelity Federal* 458 U.S. at 153. Even in instances where the federal law has not totally displaced state law, state law is nullified if it either conflicts with the federal law, an event which occurs when compliance with both state and federal regulations is impossible, or is an obstacle to accomplishing and executing the goals of the federal law. *Id.*

To determine whether the doctrine of pre-emption is applicable here we must first consider the relevant federal law. Congress has vested in the Secretary of Transportation the power and duty to regulate motor carriers and the qualifications of their drivers including medical qualifications.[2] To this end, FED DOT's Bureau of Motor Carrier Safety, Federal Highway Administration, has promulgated comprehensive regulations regulating, *inter alia*, the *minimum* physical qualifications for drivers of interstate carriers. Furthermore, employers of drivers of interstate carriers are mandated to comply with these regulations.

Not only has FED DOT established the minimum qualifications, it has also set up an appeal procedure for situations in which a driver is determined to be unqualified. Pursuant to Regulation 391.47, 49 C.F.R. §391.47, a driver deemed unqualified must submit proof to the Director of the Bureau of Motor Carrier Safety (Director) that there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's medical qualifications. The regulation further provides that the party

---

[2] At the time relevant to this appeal, *i.e.*, 1980, the Secretary's authority could be found at 49 U.S.C. §1655(e)(6)(C). It now appears at 49 U.S.C. §3102(b)(1).

applying for a determination of a driver's medical quali-
fications must submit the test results of an impartial
medical specialist along with relevant medical records,
the opinions of any physicians who have examined the
driver and other relevant data. Subsequent to the sub-
mission of this information, the Director notifies all par-
ties that a decision will be rendered. At that point the
other party, whether it is the driver or the employer,
can submit any data it deems relevant. The Director
then issues his determination. Review of this determina-
tion is available. Importantly, the regulation specifically
provides that once an application is submitted to the
Director the driver *shall be deemed disqualified* until
the Director determines otherwise.

Lengthy recital of the provisions of this regulation is
necessary to demonstrate that an actual conflict as de-
fined in *Fidelity Federal* exists here.[3] Demonstration of
this conflict is most easily seen by examining the
Commission's order. The Commission, having deter-
mined that Section 5 of the Act was violated, directed
Carolina to offer the applicants the next two available
positions despite the determination, which has not been
properly challenged, that they do not meet federal med-
ical requirements.[4] But to follow this order Carolina

---

[3] Because we have found that an actual conflict has occurred
between state and federal law, we need not find that federal law has
totally displaced state law. *Fidelity Federal,* 458 U.S. at 153.

[4] The Commission argues that the procedures set forth in fed-
eral Regulation 391.47 are not the exclusive means for appealing a
medical rejection, and apparently is suggesting that Birch and
Lewis can properly challenge their unqualified status before the
Commission. We cannot agree. The Commission has no authority to
interpret and apply the federal regulation and to hold that it did
would be to suggest that each of the fifty states could interpret the
federal regulation differently. We note that Birch and Lewis did not
appeal their medical rejections to the Director pursuant to Regula-
tion 391.47.

would have to employ drivers who have not been certified qualified under federal law; yet federal law requires this certification. This creates a direct conflict. Furthermore, this result in addition to defying the Supremacy Clause of the United States Constitution, also shows a complete disregard for the federal policy that the safety of the public rather than that the rights of the driver is paramount. This policy is evidenced by the mandatory language in Regulation 391.47 that where there is a conflict in the medical evidence a driver will remain *unqualified* until the federal government decides to the contrary.[5] To summarize, Regulation 391.47 clearly establishes mandatory minimum federal qualifications. The Commission's application of the Act and Regulation 44.4 in the instant case has resulted in an order which in effect mandates Carolina to ignore those qualifications. This situation makes Carolina's compliance with both federal Regulation 391.41 and the Commission's order impossible and creates a direct conflict. Hence, state law must yield.[6] *Silkwood; Fidelity Federal.*

In an attempt to establish that no conflict between state and federal law exists, the Commission asserts that the conflict here is not between federal law and the Act, but between Dr. Harhigh's opinion and the Act. This begs the question. Dr. Harhigh's opinion is that the federal regulations are not met. He may be right or he may

---

[5] *See also* 49 U.S.C. 1651, the declaration of purpose appearing in the statute creating FED DOT. This declaration mentions, *inter alia,* the federal policy of creating a *safe* national transportation system.

[6] While it may be true that the Director could eventually certify the men as qualified, thus dispelling the conflict, we refuse to hold that Carolina would be required to seek such a determination or that the men could be "deemed" qualified in the interim, thus continuing the conflict.

be wrong—but this is not for the Commission to decide. Unless his opinion is challenged via the federal process and ruled upon by the Director, it stands as a declaration that certification of the two men would be in violation of federal law and the Commission has no power to ignore or overrule that declaration.

As a further attempt to demonstrate the inapplicability of the doctrine of pre-emption the Commission relies upon FED DOT regulation 390.30, 49 C.F.R. §390.30, which provides:

> Except as otherwise specifically indicated, Parts 390-397 of this subchapter are not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws *relating to safety,* the *compliance with which would not prevent full compliance with these regulations by the persons subject thereto.* (Emphasis added.)

It is clear that in this instance compliance with Commission Regulation 44.4 *would* prevent full compliance with the federal regulation. Furthermore regulation 390.30 is not helpful to the Commission's position because, while it does indicate that joint regulation *(i.e.* federal and state) is permissible, that joint regulation pertains only to *safety* and Commission Regulation 44.4 does not pertain to or in this case advance that concern. Additionally, a fair reading of regulation 390.30 makes it manifestly clear that where conflict occurs state law must yield.

Finally, the Commission relies upon *Colorado Anti-Discrimination Commission v. Continental Airlines, Inc.,* 372 U.S. 714 (1963) wherein the High Court ruled that a federal regulation pertaining to the hiring of pilots did not prohibit state regulation of employment discrimination based upon race. But in *Colorado,* contrary to the instant case, it was not contended that the

state law was in conflict with federal law, that it denied rights granted by federal law or that it frustrated the purpose of the federal law. *Id.* at 722. The purpose of federal law here is to establish minimum medical qualifications for drivers of interstate carriers for the obvious function of protecting the public. Application of state law to excuse those qualifications would certainly frustrate the purpose of this federal law. Thus, reliance upon *Colorado* is misplaced.

Our holding today is narrowly based upon the direct conflict which has arisen when Commission Regulation 44.4 is invoked and denies effect to federal Regulation 391.41. This holding should not be read to suggest that federal law is so pervasive that all adverse personnel actions taken against interstate trucking applicants are beyond the scope of Commission's power. Nor should it be read as indicating that Commission Regulation 44.4 is invalid in any other respect.

#### ORDER

NOW, August 5, 1986, the orders of the Pennsylvania Human Relations Commission, Docket Nos. E-19317 and E-19318 entered December 20, 1984 are hereby reversed.

Judge COLINS dissents.