387 P.2d 1013

**INDUSTRIAL URANIUM COMPANY,**
a Utah Corporation, Appellant,

v.

**STATE TAX COMMISSION of Arizona,** consisting of William Stanford, Chairman, and Thad E. Moore and Warren Peterson, Members, Appellees.

No. 7162.

Supreme Court of Arizona,

En Banc.

Dec. 19, 1963.

Laurence Davis, Phoenix, and Wilford M. Burton, Salt Lake City, Utah, for appellants.

Wade Church, former Atty. Gen., Robert W. Pickrell, Atty. Gen., and Arthur E. Ross, former Asst. Atty. Gen., Phoenix, for appellees.

STRUCKMEYER, Justice.

Under protest appellant' paid certain transaction privilege taxes assessed by the State Tax Commission and by this action

sought a refund pursuant to the applicable statute, A.R.S. § 42–1339. The cause was dismissed in the court below for failure to state a claim on which relief could be granted and this appeal duly followed.

Appellant is a Utah corporation engaged in the business of mining, producing and shipping uranium and vanadium ores from lands within Arizona held in trust by the United States for the Navajo Tribe of Indians. Its business is carried on pursuant to certain mining permits and leases issued by the Navajo Tribe with the approval of the Secretary of Interior. Taxes were assessed by the appellee Commission pursuant to the authority of A.R.S. §§ 42–1309 and 42–1310.[1] Appellant questions the validity of the Arizona exaction as construed and applied by the Commission to its activities by reason of the federal constitution, laws, and treaty with the Navajo Tribe.

■ We have stated the nature of this tax repeatedly. It is not a tax upon sales. *It is purely an excise tax upon the privilege or right to engage in business in Arizona measured by the gross volume of business conducted within the state.* Arizona State Tax Commission v. Garrett Corp., 79 Ariz. 389, 291 P.2d 208. The legal incidence of *the tax falls on the seller.* The taxable event is the engaging in the business of mining in Arizona.

■■ That the business activity occurred within the boundaries of the Indian reservation does not remove the transaction from Arizona's jurisdiction. Silas Mason Co. v. Tax Commission of Washington, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187; Indian Territory Illuminating Oil Co. v. Board of Equalization, 288 U.S. 325, 53 S.Ct. 388, 77 L.Ed. 812; Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091. State laws apply on reservations unless

1. § 42–1309. *"Levy of tax; purposes; distribution*
"A. There is levied and there shall be collected by the commission * * * annual privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the schedule as set forth in §§ 42–1310 through 42–1315."
§ 42–1310. *"Mining; timber; public utilities and carriers; contractors; newspapers and printing*
"The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:
\* \* \*
"2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses: (a) Mining, quarrying, smelting, or producing for sale, profit or commercial use, any oil, natural gas, limestone, sand, gravel, copper, gold, silver or other mineral product, compound or combination of mineral products, or felling, producing or preparing timber or any product of the forest for sale, profit or commercial use."

such application would interfere with reservation self-government or impair a right granted or reserved by federal law. Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573.[2]

■ Plaintiff's sales to the Atomic Energy Commission, whose mills are in Colorado and New Mexico, are of no concern if otherwise unrelated to appellant's taxable activity. The tax here does not place a direct burden or restriction on commerce. The interstate commerce clause of the federal constitution does not prevent the imposition of a tax measured by the gross income or receipts from intrastate transactions notwithstanding the total activities from which the transactions stem may have incidental interstate attributes. State Tax Commission of Utah v. Pacific Cast Iron and Pipe Co., 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8; International Harvester Co. v. Department of Treasury of Indiana, 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313.

A tax laid on those engaged in the business of mining is not one laid on interstate commerce for mining is a local business subject to local regulation and taxation. Oliver Iron Mining Co. v. Lord, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929.

■ Appellant points to Article II of the Navajo Treaty of June 1, 1868, (15 Stat. 668)[3] to support a claim that the treaty excludes Arizona from collecting this tax. We pass through appellant's argument as being without substantial merit. Nor is there merit in its assertion of immunity arising out of congressional enactment. By 43 Stat. 244, 25 U.S.C. § 398, unallotted lands on Indian reservations may be leased by the Secretary of the Interior with consent of the tribal council and the production of oil and gas and other minerals from such lands may be taxed by the state in which they are located in all respects the same as production from unrestricted lands.

2. The lessee of mineral rights on allotted and restricted Indian lands has no immunity under the federal constitution from nondiscriminatory gross production and excise taxes on oil produced from such lands. Oklahoma State Tax Commission v. Texas Co., 336 U.S. 342, 69 S. Ct. 561, 93 L.Ed. 721.

    We note Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 376, 58 S. Ct. 621, 623, 82 L.Ed. 904, 907, where the principle was affirmed that the power to tax should not be crippled by extending the constitutional exemption from taxation to those subjects which fall within the application of non-discriminatory

laws where there is only a remote, if any, influence upon the exercise of the functions of government.

3. Article II of the treaty of June 1, 1868 (15 Stat. 668) states in part as follows:

    " * * * the United States agrees that no persons except those herein so authorized to do, and except such officers, soldiers, agents and employés of the government, or of the Indians, as may be authorized to enter upon Indian reservations in discharge of duties imposed by law, or the orders of the President, shall ever be permitted to pass over, settle upon, or reside in, the territory described in this article."

**134**

Appellant finally argues that royalties paid to the Navajo Tribe must be deducted from the value of ore mined before computing Arizona's tax. Appellant's position is in direct conflict with the Arizona statute pertaining to the measure of the tax in question. By A.R.S. § 42–1311, subd. A, the rate of tax payable by a person engaged in the business of mining

> " * * * shall be applied to the value of the entire product mined, * * * regardless of the place of sale of the product or of the fact that deliveries thereof may be made to points without this state."

We think it unnecessary to abstract appellant's extensive argument leading to its conclusion. Royalties, insofar as the Arizona statute is concerned, are simply a non-allowable cost incurred in the mining or production of the ore. It is sufficient to say that the classification of the subjects of taxation is for the legislature. Whether the tax should be placed upon gross income and gross proceeds or whether it should be computed on net income or net proceeds is simply a matter with which the courts are not concerned, at least so long as the exaction does not contravene a state or federal constitutional prohibition.

Moreover, Congress, in the enaction of 43 Stat. 244, 25 U.S.C. § 398, and in providing that minerals from unallotted lands on Indian reservations may be taxed by the state did not require that the Indian royalty be deducted before computation of the tax. Appellant's position is controlled by British-American Oil Producing Co. v. Board of Equalization of Montana, 299 U.S. 159, 57 S.Ct. 132, 81 L.Ed. 95, wherein a gross production tax on gas and oils mined from tribal Indian lands was upheld. This tax is not imposed by Arizona on any lands or other property within an Indian reservation owned or held by an Indian. It does not, therefore, conflict with the Arizona Enabling Act, 36 Stat. 570, Ariz.Const. art. 20, para. 5, A.R.S.

Judgment of the court below is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.