440 P.2d 330

**L. B. CLAYTON and Era A. Clayton, husband and wife, Appellants,**

v.

**COMMUNICATIONS CAPITAL CORPORA- TION, a corporation, Don G. Owsley and Otilie E. Owsley, husband and wife, Appellees.**

**No. 2 CA–CIV 448.**

Court of Appeals of Arizona.
May 2, 1968.

Boyle, Bilby, Thompson & Shoenhair, by Richard M. Bilby, Tucson, for appellants.

Bernard Weinstein, Tucson, for appellees.

MOLLOY, Judge.

This appeal presents procedural problems relevant to the manner of the submission of a case to a trial judge for decision and substantive law questions involving the construction of a contract pertaining to the sale of a radio broadcasting business. The procedural problems must be resolved first in order to determine the posture of the case on appeal.

The suit is upon a promissory note in the original sum of $100,000 with an alleged unpaid balance of $50,000. The note was given in connection with the purchase of Radio Station KMOP at Tucson, Arizona. The sales agreement was between Bamray Broadcasting Company as seller, and the defendant L. B. Clayton, as buyer.

In accordance with an option given him in the agreement, the defendant Clayton caused a corporation formed by him to execute the promissory note in question, and the note was accepted by the seller at the time of closing. Subsequently, the note was assigned to plaintiffs by Bamray. The complaint asked, *inter alia,* for judgment against the defendant Clayton and against his wife, alleging that he was acting as an agent of the community of himself and wife. The answer denied any individual obligation and also the allegation pertaining to the community. At pretrial, it was indicated the "issues to be tried," insofar as the parties on appeal are concerned, were:

"1. Is Deft. Clayton personally liable on the promissory note, or is only Pima Broadcasting [maker of the note upon which suit is brought] liable?

\* \* \* \* \* \*

"5. Are Pltfs. entitled to recover attorney's fees from Clayton?

"6. What is the contract covering the rights of the parties? (NOTE: Two of the parties have each submitted slightly different versions of the contract.)"

There was no issue expressed as to community liability. At the pretrial conference, the court allowed the complaint to be amended to add an allegation that Pima Broadcasting Company was the alter ego of the defendant Clayton but no additional issue of fact was noted in the pretrial order. The case was set down for trial without a jury on May 26, 1966.

On May 26, 1966, the record shows that counsel were present and each counsel made a "Statement" to the court. There was filed in court a stipulation which commences with the ambivalent statement:

"That a trial to determine the facts in this action [is] may be unnecessary in that the following are to be considered as agreed facts. \* \* \*"

The original stipulation filed and signed by both the counsel for the plaintiffs and defendants used the word "is" in that portion, quoted above, placed in brackets. This word was stricken out in ink and the words "may be" written above the deletion, but this change is initialed by only one of the counsel of record, though other changes were initialed by both counsel. After detailing various facts which have bearing upon the substantive law questions presented in this appeal, the stipulation ended with the statement:

"2. That the date set for trial be utilized by the Court for a hearing wherein counsel will submit legal memoranda and oral argument to the Court upon the following issues:

"a) Whether the defendant L. B. Clayton is personally liable to the plaintiffs;"

The only other issue proposed to be submitted in the original typing is stricken out in ink and initialed by counsel for all of the stipulating parties.

At the conclusion of the proceedings on May 26, 1966, the record shows an order "\* \* \* that further hearing on the matter is continued, subject to call." On June 6, 1966, the defendant Clayton (without any mention being made of his wife) moved the court for summary judgment. On June 17, 1966, there is a minute entry show-

ing that counsel were present before the court to argue and that the "[m]atter (the case) is taken under advisement."

On December 19, 1966, there is a minute entry directing plaintiffs' counsel to prepare and submit findings of fact, conclusions of law and a judgment against both Clayton and wife. Such were filed and written objections thereto were made. Oral argument on "All Pending Matters" occurred on January 25, 1967, at which time the "[m]atters" were taken under advisement.

On March 8, 1967, the defendants' objections to the plaintiffs' proposed findings of fact and conclusions of law were "denied" and it was further ordered:

" * * * that the Plaintiffs' Proposed Form of Judgment shall be signed at the expiration of five days from date, unless within said five day period the defendants shall file with the Court an Affidavit or Affidavits by persons having personal knowledge and which said Affidavit denies that the following facts are true, and specifically in what way the same are not true:

"1. That the defendant, Era A. Clayton, was the wife of defendant, L. B. Clayton, on April 16, 1959 [date of the sales contract];

"2. That the Agreement dated April 16, 1959 for the sale of K–MOP Radio Station was prepared by the attorneys for the defendants, L. B. Clayton and Era A. Clayton;

"3. That the plaintiffs have received payments from the Bankruptcy Proceeding of Pima Broadcasting Company since the institution of this action to the extent that the original principal balance of $50,000.00 has now been reduced to $18,-081.03, together with accrued interest thereon in the sum of $6,150.00 as of January 4, 1967; and

"4. That the plaintiffs have duly received by assignment all the right, title and interest of Bamray Broadcasting Company in and to the contract entered into with the defendant, L. B. Clayton, dated April 16, 1959, together with the security running with said contract.

"IT IS FURTHER ORDERED that in the event such Affidavit be filed, then upon request of either party the matter to be set down for Oral Argument, otherwise the matter be deemed taken under advisement."

Affidavits on behalf of the defendants Clayton were filed which stated, *inter alia,* that on April 16, 1959, and at all other times material to this action, the Claytons were residents of the State of Oklahoma, which is not a community-property state; that Mrs. Clayton had not participated in any way in the agreement for the purchase of KMOP; that the agreement of April 16, 1959, had not been prepared by attorneys for the defendants Clayton but by the attorneys for both parties, and that the agent of the seller, Bamray, had been informed that Clayton did not intend to be personally obligated on the note to be given and that Bamray had agreed to sell under those terms.

There was a request for oral argument by the defendants Clayton and on March 30, 1967, the court ordered:

" * * * that the evidence be reviewed on the matters referred to in the Defendants' AFFIDAVIT filed herein, and the matter is set for hearing on Wednesday, April 5, 1967. * * *"

On April 5, there is a minute entry indicating counsel for the parties were present and that the plaintiffs' counsel made a statement to the court " * * * regarding putting on evidence at this time." The defendants' counsel argued " * * * his objections to the putting on of evidence at this time," and the court granted plaintiffs' request to put on evidence. At this time, the minute entry of March 30, 1967, was amended to substitute the word "received" for the word "reviewed" and one witness was sworn and testified. Minute entries indicating the normal procedure of a court trial were not recorded. This court does not have a transcript of the testimony taken.

At the conclusion of this testimony, the court reserved ruling on three offers of evidence and ordered that the "[m]atter is taken under Advisement." There was never a ruling on the offers of evidence. Thereafter the court rendered its own findings of fact and conclusions of law, which, *inter alia,* ordered (1) that the motion of the defendant Clayton for summary judgment be denied; (2) found that the defendant Clayton acted individually and as the agent of the community of himself and wife in connection with the contract of April 16, 1959; (3) found that the beneficial interests of Bamray in this contract had been duly assigned to the plaintiffs; and (4) found that it was "* * * the manifest intent * * *" of the parties that the defendant Clayton be liable for the debt owed and that the execution and delivery of the promissory note in the sum of $100,000 was not accepted as payment of the sales price. On the basis of the facts found, the court concluded that the defendant Clayton was liable upon "* * * an integrated unambiguous contract * * *" and that he and "* * * * the community estate belonging to himself and his wife * * * are liable for the balance of the purchase price. * * *" On the basis of this conclusion a judgment against both Claytons was entered from which an appeal is taken here.

The "findings of fact, conclusions of law" rendered by the trial court commence with the statement:

"This matter came on for hearing before the Court, sitting without a jury, *upon the express stipulation of the parties that a trial to determine the facts in this action was unnecessary, based upon a stipulated set of facts* and the interpretation of a written agreement, all of which was submitted to the Court by the parties. * * *" (Emphasis ours.)

In their opening brief, the appellants-defendants state:

"The controversy was submitted to the lower court upon limited agreed facts."

The appellees-plaintiffs in their brief do not directly contest this statement but variously take the position that the case went off on summary judgment in their favor (thus ignoring the record denial of their motion) or that the defendants Clayton were given the "opportunity" of putting on evidence at the March 30, 1967, hearing and that their abstention in this regard should be considered to their detriment on appeal. When considering the case as if it went off on summary judgment, plaintiffs argue that an affidavit attached to their motion for summary judgment to the effect that the sales contract was prepared by the Clayton's attorney should be considered as establishing this fact on appeal, and that the defendants' affidavit controverting this fact should be ignored, because it was filed after the trial court had already decided the case in the plaintiffs' favor on December 19, 1966.

■ It is our view that we have here presented a situation of an agreed case or a case stated, and not a trial to the court without a jury. The right of the parties to submit a case to the court for decision on the basis of stipulated facts is recognized at common law, 3 Am.Jur.2d Agreed Case § 2, at 725, and is authorized in many states by rule of procedure such as our own Rule 52(c), Rules of Civil Procedure, 16 A.R.S.[1]

It is clear from the stipulation filed below that the entire case was not submitted but rather the limited issue of "[w]hether the defendant L. B. Clayton is personally liable to the plaintiffs." Separation of issues for trial is specifically authorized by Rule 42(b), as amended, Rules of Civil Procedure, 16 A.R.S. We see no jurisdic-

---

1. "The parties to an action may submit the matter in controversy to the court upon an agreed statement of facts, signed by them and filed with the clerk and the court shall render judgment thereon as in other cases. The agreed statement, certified by the court to be correct, and the judgment shall constitute the record of the action." Rule 52(c), R.Civ.P., 16 A.R.S.

tional bar to the parties stipulating to the submission of a limited issue when the same is accepted by the court and acted upon, as in this case.

When a case is submitted on agreed facts, the law is well established that the court has no power to go beyond the stipulated facts. Public Finance Corporation v. Scribner, 159 Me. 150, 189 A.2d 368 (1963); and see Cleghorn v. Benjamin, 239 Iowa 455, 31 N.W.2d 887 (1948); 89 C.J.S. Trial § 578, at 356. It has been held that the court has no right to draw inferences of fact from the agreed facts, 1165 Fifth Avenue Corporation v. Alger, 288 N.Y. 67, 41 N.E.2d 461, 141 A.L.R. 1157 (1942); Ditmars-31' Street Development Corp. v. Punia, 17 A.D.2d 357, 235 N.Y.S. 2d 796 (1962), and is precluded from taking evidence. Guntert v. Richardson, 47 Haw. 662, 394 P.2d 444 (1964); and see 3 Am.Jur.2d Agreed Case § 23, at 738.

There is authority for the proposition that if the trial court's conscience leads it to the conclusion that a judgment rendered on the stipulated facts will result in injustice, the court has the power to discharge the case stated and order that the action be tried in normal course. Paper Trucking Co. v. Russo, 281 Mass. 209, 183 N.E. 149 (1932). But no such procedure was followed here. Accordingly, we believe that insofar as this judgment is concerned, it must be tested on the basis of the stipulated facts, filed with the court on May 26, 1966, and that the matters contained in the affidavits and in the testimony "reviewed" or "received" at the hearing of April 5, 1967, can lend no support to the judgment.

We now proceed to the substantive question of law submitted to the trial court. The stipulation of May 26, 1966, had attached a copy of the sales agreement of April 16, 1959, the promissory note upon which the action was brought, the chattel mortgage to secure same, and various other documents connected with the closing of this sale. The parties stipulated that "[n]o other contracts or promissory notes were executed which modify the rights of the parties under the contract and promissory note * * *" which were attached. On appeal, all parties take the position that the sales contract is clear and unambiguous.

The sales contract in question in its most critical language insofar as the issues before this court are concerned provided:

"The purchase price to be paid by buyer is the sum of $140,000.00, *payable as follows:*

"$5,000 upon the execution of this agreement, which said sum shall be paid to and held by Bernard Weinstein of Tucson, Arizona in escrow pending the closing of this sale;

"$35,000 to be paid upon the date of closing of this sale as said date shall be hereinafter defined; and

"$100,000 *by promissory note of buyer, or a corporation to be formed by buyer,* payable to seller at the rate of $10,000 per year, plus interest upon deferred payments at the rate of 5% per annum, the first of which payments shall be due one year after the date of closing of this sale, and subsequent payments shall be annually thereafter until the entire principal sum has been paid. Payment of said promissory note shall be secured by a collateral pledge by buyer of all of the issued capital stock of the corporation to be formed by him, by a chattel mortgage executed by the said corporation to be formed, upon all of the physical assets being transferred to buyer by this agreement, and by an assignment of the accounts receivable of the corporation to be formed by buyer. Buyer reserves the right of prepayment on said note." (Emphasis ours.)

In the stipulation, the parties agreed that Pima Broadcasting Company at the time of closing and execution of the promissory note was incorporated and that its acts were valid. There is no question but what the note given by the corporation was secured by assignment and pledge as required by the contract.

**454**

■ Under these stipulated facts, we see no basis for imposing individual liability upon the defendant Clayton, either under the note (upon which this action is brought) or upon the purchase contract itself, which is obliquely referred to in the pretrial order. As far as the promissory note is concerned, the plaintiffs admit on appeal that Clayton is not liable on it, because he was not a party to it. See 11 Am.Jur.2d Bills and Notes § 521, at 580; and 10 C.J.S. Bills and Notes § 34, at 454; and see Boyle v. Webb, 54 Ariz. 188, 94 P.2d 642 (1939); and *Britton on Bills and Notes*, Hornbook Series, § 52, at 203.

■ As for the contract, it has been performed by the buyer. Performance on the part of buyer is expressed in the alternative. Clearly Clayton was not required to give both a note signed by himself *and* by a corporation. When alternative performance is permitted, full performance of either alternative is a discharge of the obligor's liability. 17 Am.Jur.2d Contracts § 363, at 805–06; 17A C.J.S. Contracts § 455, at 572–574; Restatement of Contracts § 325 (Comment c) and § 386.

Our Supreme Court has indicated that a promissory note given for a prior indebtedness does not act as payment of the indebtedness " * * * unless it is expressly agreed between the parties that it shall be so accepted." Reid v. Topper, 32 Ariz. 381, 386, 259 P. 397, 399 (1927); and see Evans v. Colorado Savings Bank, 41 Ariz. 504, 19 P.2d 1062 (1933). We see a distinct difference between these cases and the one at bar. In both *Reid* and *Evans* there was a preexisting obligation which clearly called for payment in monetary exchange rather than a promissory note. Under such circumstances, the presumption that the parties did not intend to extinguish the preexisting indebtedness by the acceptance of the debtor's defective paper is a natural one.

But here, at the very time the original obligation was created, the obligor was given the option to pay a portion of the purchase price by the execution and delivery of a promissory note of a corporation to be formed by him, providing that this note was secured in certain specific ways. This contract was the only indebtedness preexisting, and as we have seen, the buyer's obligations thereunder have been discharged by performance.

We distinguish the decision of Golder v. Crain, 6 Ariz.App. 207, 437 P.2d 959 (1968), in which we held that the designation of the buyer as "M. Crain, Sr. and or nominee" was ambiguous to the extent that the court erred in granting summary judgment in the buyer's favor without knowing the circumstances giving rise to the contract. On an agreed case, such as we have here, the trial court should have assumed there were no collateral facts which would assist in the interpretation of the subject contract: Atlas Mut. Ben. Ass'n v. Portscheller, 4 Terry 298, 46 A.2d 643 (Del.1945); Lawrence County v. Horner, 281 Pa. 336, 126 A. 783 (1924); Commonwealth v. Megargee Bros., 275 Pa. 12, 118 A. 541 (1922); Folk v. City of St. Louis, 250 Mo. 116, 157 S.W. 71 (1913); and see 89 C.J.S. Trial § 578, at 355. The *Golder* decision came before the court on motion for summary judgment, a posture requiring the denial of the motion if there is any reasonable doubt as to the material facts. Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962).

Moreover, here we have a carefully worded contract as opposed to the informally prepared contract in *Golder*. In no event do we feel that a court would be justified in regarding the provisions pertaining to the execution of a note by Pima Broadcasting Company to be "merely surplusage," a possibility left open for the words "and or assignee" in *Golder,* citing San Francisco Hotel Co. v. Baior, 189 Cal.App.2d 206, 213, 11 Cal.Rptr. 32, 36 (1961).

As to the issue submitted to him, the trial court should have ruled that the defendant Clayton was not personally obligated on either this note or contract and should have then set for trial the remaining

issues, after first clarifying them by an appropriate pretrial order.[2]

Reversed and remanded for further proceedings not inconsistent herewith.

HATHAWAY, C. J., and KRUCKER, J., concur.

2. Among the factual issues that appear to be unresolved are whether the Pima Broadcasting Company was the alter ego of Clayton in this transaction and wheth-er the presumption of community obligation is rebutted by the facts pertaining to residence.