596 P.2d 38

Jerry BISHOP, d/b/a Jerry Bishop's Towing & Salvage, Mike Hunt, dba Hunt's Towing Service & Auto Salvage, Robert Steele, dba B & B Towing Service, Phil Smith, dba Aviation Auto Body & Paint, Jerry Nichols, dba Desert Refrigeration & Auto Service, Inc., Ralph Vogler, dba Martin's Towing & Auto Repair, Mylan Marble, dba H & H Service, Inc., Keith Campbell, dba J & J Auto Body, Harvey Arndt, dba Arndt Auto Body & Paint Shop, Don Sherman, dba Don's Towing, William Douglass, dba A–Star Wrecker, W. F. Maust, dba W. F. "Wally" Maust Chevron Dealer, George Grubaugh, dba George's Auto Repair and Towing, Keith Pullen, dba Pullen Tow Service, Archie Allen, dba Archie's Freeway Service, Edward F. Norzagaray, dba Eddie's Tucson Towing, and Meyer Neuman, dba Meyer's General Automotive Garage, Inc., Plaintiffs-Appellees,

v.

DEPARTMENT OF PUBLIC SAFETY, Vernon Hoy, its Director, Arizona Highway Patrol, a Division of the Department of Public Safety, Lt. G. D. Dull, District Commander, District No. 8 of the Arizona Highway Patrol, Department of Public Safety, Sgt. Ed Slechta, in his capacity as Administrating Officer for District No. 8, David Henry, in his capacity as Tow Truck Inspector for the Department of Public Safety, Defendants-Appellants.

No. 2 CA–CIV 3026.

Court of Appeals of Arizona, Division 2.

March 29, 1979.

Rehearing Denied April 25, 1979.

Review Denied May 30, 1979.

Kenneth L. Allen, Tucson, for plaintiffs-appellees.

Robert K. Corbin, Atty. Gen. by Kenneth R. Reed, John A. Baade and Paul S. Harter, Asst. Attys. Gen., Phoenix, for defendants-appellants.

1. The trial court has no power to go beyond the stipulated facts. *Clayton v. Communications Capital Corporation*, 7 Ariz.App. 449, 440 P.2d 330 (1968); 3 Am.Jur.2d Agreed Case Sec. 23 (1962); 83 C.J.S. Stipulations § 10f.(9) (1953).

## OPINION

**HOWARD, Judge.**

 This case was submitted to the trial court on an agreed statement of facts pursuant to Rule 52(c), 16 A.R.C.P. The main issue was whether the Arizona Department of Public Safety (hereinafter DPS) was acting within its powers when it created a "contract" towing system in Pima County for the removal of vehicles from the state highways. The trial court, ruling that DPS had no such power because it was, in effect, engaging in price control, declared the contract null and void and permanently enjoined appellants from entering into such contracts. Appellants first claim that the trial court erred in going outside the statement of facts signed by the parties.[1] We find it unnecessary to address this issue since, assuming arguendo that the trial court did not so err, appellees cannot prevail.

Prior to the institution of contract or agreement towing in Pima County, when DPS needed a tow truck to remove a vehicle from the state highway, it called, in rotation, one of the companies on its list of available towers. This rotation towing system had been used in Pima County for approximately 18 years. In 1977, primarily to lower the price that state and interstate highway motorists were charged for towing services, DPS requested the Tucson area towing companies to submit to it the prices they would charge. DPS selected the two towers that could satisfactorily provide the necessary services at the most cost effective level and entered into an agreement with them. The agreement provided that the highway patrol would always call one of the two towing services unless the motorist expressed a personal preference. Which of the two would be called depended primarily on the location of the disabled vehicle. This

As to what action the trial court should take when all the facts essential to a determination have not been submitted, see *In re Edmundson*, 273 N.C. 92, 159 S.E.2d 509 (1968).

agreement is for a specific period of time and after the time lapses DPS solicits "bids" again.

There are approximately 30 towing companies in Pima County. The towing calls covered by the DPS agreement comprise approximately 90% of all towing calls from state and interstate highways in Pima County. The records for the first six months of operation under the agreement towing system reflect a lower cost of towing. Although it was not a major consideration, DPS hoped that the agreement system would also reduce towers' response time.

Appellees contend that DPS has only that authority delegated to it by the legislature and that the legislature has not given DPS the authority to control the price that a towing service can charge a motorist. While we agree that DPS cannot control towing company charges, we do not agree that it is doing so under the contract towing agreement or that the contract towing system is outside its legislative grant of powers.

First of all, let us examine the powers and duties of DPS. The highway patrol is a division of DPS. A.R.S. Sec. 41–1741(A). Highway patrolmen are vested with the authority of peace officers, primarily for the purpose of enforcing laws relating to the use of highways and operation of vehicles thereon. A.R.S. Sec. 41–1741(C).

As peace officers responsible for the enforcement of laws relating to the use of the state highways, highway patrolmen have the authority to remove illegally stopped vehicles pursuant to A.R.S. Sec. 28–872:

"A. When any police officer finds a vehicle standing upon a highway in violation of the provisions of § 28–871 the officer is authorized to move the vehicle, or require the driver or other person in charge of the vehicle to move the same, to a position off the paved or main-traveled part of the highway.

B. Any police officer is authorized to remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway, bridge, causeway, or in any tunnel, in such position or under such circumstances as to obstruct the normal movement of traffic.

C. Any police officer is authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway:

1. When a report has been made that such vehicle has been stolen or taken without the consent of its owner.

2. When the person or persons in charge of such vehicle are unable to provide for its custody or removal.

3. When the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay.

4. When any vehicle is left unattended for more than four hours upon the right-of-way of any freeway which has full control of access and no crossings at grade.

5. When any vehicle is left unattended for more than two hours upon the right-of-way of any freeway, within the boundaries of a city, which has full control of access and no crossings at grade."

A.R.S. Sec. 41–1713(B)(3) states that the director of DPS may:

"Cooperate with any public or private agency or person to receive or give necessary assistance and may contract for such assistance subject to legislative appropriation controls."

We believe that under A.R.S. Sec. 41–1713(B)(3) DPS can enter into agreements with towing services in order to fulfill the authority granted to its patrolmen under A.R.S. Sec. 28–872. We further believe that since it can enter into such agreements, it can also set the price that the towing services will charge by means of "competitive bidding". This does not constitute a regulation of the charges of towing companies any more than the acceptance of a low bid for the construction of a state office building constitutes price con-

trol of the building industry. If a towing company desires to have referrals come to it from DPS it must be one of the low bidders. But this does not mean that the towing company cannot charge another price for towing calls which do not originate from DPS.

The judgment is reversed with directions to enter judgment in favor of the appellants.

RICHMOND, C. J., and HATHAWAY, J., concur.