626 P.2d 596

**STATE of Arizona ex rel., ARIZONA DEPARTMENT OF REVENUE, Plaintiff-Appellee,**

v.

**COCHISE AIRLINES, an Arizona corporation, Defendant-Appellant.**

No. 1 CA–CIV 4589.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 26, 1980.

Rehearing Denied Feb. 24, 1981.

Review Denied March 24, 1981.

Robert K. Corbin, Atty. Gen., John A. LaSota, Jr., Former Atty. Gen., by Ian A. MacPherson, Asst. Atty. Gen., Phoenix, for plaintiff-appellee.

Evans, Kitchel & Jenckes, P. C., by Dean C. Short, II, Phoenix, for defendant-appellant.

## OPINION

WREN, Judge.

The single issue presented by this appeal is whether the appellant Cochise Airlines is liable to pay transaction privilege taxes imposed by A.R.S. §§ 42–1309 and 42–1310(2)(d) on its intrastate operations Cochise contends that the taxes are prohibited by the provisions of 49 U.S.C. § 1513, a portion of the Airport Development Acceleration Act of 1973 by which the Congress broadened federal monetary aid for airport development and prohibited certain forms of state taxation. The position of the State is that although the terms of the federal act are broad, 49 U.S.C. § 1513 was intended only to prohibit an airport "head tax" in any form and that under applicable standards of statutory construction, the subject Arizona transaction privilege tax was not prohibited. The State prevailed in the trial court. Insofar as the subject tax is imposed upon the carriage of persons, we reverse. Insofar as the tax is imposed upon the transportation of freight, we affirm and remand for a determination of the amount of appellant's liability.

Section 42–1309 provides, in pertinent part:

A. There is levied and there shall be collected by the commission for the purpose of raising public money to be used in liquidating the outstanding obligations of the state and county governments, to aid in defraying the necessary and ordinary expenses of the state and the counties, to reduce or eliminate the annual tax levy on property for state and county purposes, and to reduce the levy on property for public school education, annual privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the schedule as set forth in §§ 42–1310 through 42–1815.

A.R.S. § 42–1310(2)(d) provides pertinently:

§ 42–1310. Mining; timber; public utilities and carriers; contractors; newspapers and printing.

The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:

\*   \*   \*   \*   \*   \*

2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

\*   \*   \*   \*.   \*   \*

(d) Transporting for hire freight or passengers by railroads or aircraft from one point to another point in the state.

Airport "head taxes" came into vogue in the early 1970's. The typical airport head tax was a flat charge (of perhaps $1.00) imposed by a municipality upon a person emplaning at an airport. The municipalities typically required the airline to collect the tax together with the fare paid by the passenger. A head tax was also sometimes collected from deplaning passengers. The basic principle of head taxes was constitutionally approved by the United States Supreme Court in *Evansville-Vanderburgh Airport Authority District v. Delta Airlines*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972).

Subsections (a) and (b) of 49 U.S.C. § 1513 read as follows:

(a) No State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) shall. levy or collect a tax, fee, head charge, or other charge, directly or indi-

434

rectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; except that any State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) which levied a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom prior to May 21, 1970, shall be exempt from the provisions of this subsection until December 31, 1973.

(b) Nothing in this section shall prohibit a State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities.

Cochise Airlines is principally an intrastate airline with routes between various communities in Arizona. For the month of February, 1975, Cochise paid under protest the sum of $787.37 for transaction privilege taxes pursuant to A.R.S. § 42–1310(2)(d) and education excise taxes and special education excise taxes pursuant to A.R.S.

§§ 42–1361 and 42–1371, respectively, the latter two taxes being "piggy-back" privilege taxes imposed and collected on the same basis as the basic transaction privilege tax. The State Board of Tax Appeals held that Cochise Airlines was not liable to pay the taxes. The State Department of Revenue appealed from the decision of the Board of Tax Appeals and the cause was submitted to the Superior Court on stipulated facts and cross-motions for summary judgment. The trial court held that the Arizona transaction privilege tax remained valid and that appellant was liable to pay the taxes. This appeal followed.

It should be noted at the outset that the State does not challenge the power of Congress to prohibit imposition of the subject privilege tax on appellant's intrastate operations if it so chooses. The only issue before the Court is whether the privilege tax falls within the prohibitory terms employed by Congress in subsection (a) of 49 U.S.C. § 1513, and the included, correlative question of whether the tax is permitted under the provisions of subsection (b).

The State has made a well-presented argument to the following effect: (1) that the basic Congressional intent was to eradicate only the "head tax", in any form; (2) that under the principles of *noscitur a sociis* and *ejusdem generis*, the Congressional prohibition should apply only to taxes "like the head tax", and not to an excise tax on the privilege of engaging in business which is measured by, rather than imposed upon, gross receipts of sales; (3) that by a proper and grammatical construction of subsection (a) of the act, the words "or on the gross receipts derived therefrom" relate back only to the immediately preceding phrase "on the sale of air transportation" and not to the prior preceding phrase "on the carriage of persons traveling in air commerce", the significance being that "air transportation" encompasses foreign and interstate commerce but not intrastate commerce, while the term "air commerce" encompasses any operation or navigation of an aircraft which directly affects, or which may endanger safety in, interstate or foreign air com-

merce; (4) that the Arizona transaction privilege tax on Cochise Airlines is analogous in its effect to a sales tax, and sales taxes are explicitly excepted from the prohibition of subsection (a) by subsection (b).

After careful consideration of the State's position in this case, we find we must reject it. In our opinion, the plain terms of the federal act strike directly at the subject Arizona privilege tax, and leave no room for a construction which permits a tax on the business of carrying persons.

The crux of this controversy lies in the fact that the Arizona transaction privilege tax is essentially a tax upon the privilege of engaging in the business of transporting persons and freight, and 49 U.S.C. § 1513(a) expressly prohibits a State from levying or collecting a "tax, fee, head charge, or other charge, directly or indirectly, * * * on the carriage of persons travelling in air commerce * * *."

"Air commerce" is defined in 49 U.S.C. § 1301 as follows:

(4) 'Air Commerce' means interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or any operation or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce.

"Air transportation", as indicated above, refers to interstate, overseas, or foreign air transportation or the transportation of mail by aircraft. 49 U.S.C. § 1301(10). Although the parties' stipulation of facts in the trial court does not state in so many words that Cochise Airlines is in "air commerce", it is clear from a reading of the briefs of the parties that there is no dispute over the fact that Cochise's operations are in "air commerce." Indeed, the thrust of the State's argument is that Cochise is in "air commerce" but does not sell "air transportation" in its intrastate operations.

Without characterizing 49 U.S.C. § 1513 as ambiguous, we have carefully reviewed the reported legislative history preceding enactment of the statute. *See Cass v. United States*, 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974). Some of the history is found in the *1973 United States Code, Congressional, and Administrative News* at pages 1434 through 1463. It is apparent from this history that Congress was primarily concerned with the dual objectives of eliminating unpopular head taxes and making available additional federal funds for airport development. A close reading of the reported legislative history, however, fails to reveal any expression of an intent to confine the prohibitory terms of § 1513 to the head tax.

The Airport Development Acceleration Act of 1973 was preceded by the Airport and Airway Development Act of 1970 and the Airport and Airway Revenue Act of 1970. In the 1970 Revenue Act, the Congress imposed various taxes upon air users to finance certain airport improvements and development. The largest single component of this tax package in terms of revenues to be produced for the Airport and Airway Trust Fund was an eight percent tax on the price of domestic air passenger tickets. This tax, codified as 26 U.S.C. §§ 4261 and 4262, is imposed upon all persons purchasing "taxable transportation" as defined in 26 U.S.C. § 4262. It is clear from a reading of the latter statute that "taxable transportation" includes both interstate and intrastate rights. For a general discussion of the 1970 legislation, *see Massachusetts v. United States*, 435 U.S. 444, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978).

When Congress thus acted in 1970 to tax commercial aviation users to establish the Airport and Airways Trust Fund, it did so according to the United States Supreme Court in *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, supra*, with no evident purposes to preempt state and local taxes. Legislative discussion of the 1973 Act, however, indicates a conviction on the part of interested legislators that the Supreme Court in *Evansville* misread its earlier intent. Discussion in the Senate of Senate Bill 38, a part of which became 49 U.S.C. § 1513, as reported in Volume 119 of the Congressional Record,

Part 3, pages 3349–3350, includes the following:

[MR. CANNON]:

\* \* \* \* \* \*

Finally, Mr. President, S. 38 prohibits a new, inequitable, and potentially chaotic burden of taxation on the nearly 200 million persons who used air transportation each year. The bill prohibits the levying of State or local head taxes, fees, gross receipts taxes or other such charges either on passengers or on the carriage of such passengers in interstate commerce.

*In 1970, Congress established a national, uniform system of user taxation on all users of the air transportation system and levied a tax of 8 percent on all airline tickets. That user tax was intended to finance aviation facilities development through a national program and Congress intended at the time that the Federal tax be the only tax on airline passengers.*

Last year, however, the U.S. Supreme Court upheld the validity of several State and local passenger head taxes, overturning a precedent established more than a hundred years ago.

\* \* \* \* \* \*

By prohibiting State taxation on passengers or on air transportation, the committee has accepted greater responsibility for U.S. assistance. With the increased Federal assistance, we can see no valid reason for the continuance of local passenger taxation.

\* \* \* \* \* \*

[MR. PEARSON]:

Finally, Mr. President, the committee bill prohibits State and local taxation of air fares. The Congress intended in 1970 to preempt the States and localities from levying such taxes, as taxation on air fares is one of the predominant sources of revenue for the trust fund. Recent Supreme Court decisions necessitate the clarification of this congressional policy determination.

If more than 500 localities—or even a significant proportion of this number—were unilaterally to levy taxes on airline passenger fares, there would result an unconscionable and unacceptable burden on interstate commerce. The national system of air service upon which 180 million airline passengers depend annually would become a hodgepodge of Balkanized assessments and levies against nonresident travelers whose business or leisure takes them across State lines. The committee bill prohibits State and local taxation of air fares, but this Federal preemption is carefully balanced by substantial increases in trust fund assistance for airport development and modernization. (emphasis added.)

From its wording, it seems reasonable to conclude that 49 U.S.C. § 1513 is reflective of a change in Congressional thinking and an intent to curb the freedom of the states to impose taxes and charges ultimately paid by the consumer in this area. Such a conclusion is indicated by the fact that Congress enacted a law which in one part prohibits any direct or indirect tax or charge "on the sale of air transportation or on the gross receipts derived therefrom." This is a prohibition against a tax on *interstate* or foreign air fares. The prohibition of a tax on the "carriage of persons traveling in air commerce", apparently added late in the legislative process, is in effect a ban on the direct or indirect taxation of *intrastate* airline fares. These dual prohibitions would assure Congress a large measure of control over the taxation economics of airline travel. Such a concern is expressed throughout the reported legislative history.

Appellee's reliance upon the principles of *noscitur a sociis* and *ejusdem generis* necessarily demands that we focus upon the term "head charges" in § 1513(a) and view the other more general terms as adjunctive to that term. One basic difficulty with appellee's insistence that Congress intended only to prohibit emplaning and deplaning charges, however, is that the remainder of § 1513(a) makes no attempt to limit the taxes described to these airport user taxes. After prohibiting any direct or indirect tax upon a "person traveling in air commerce", a category seemingly sufficient in and of

itself to eliminate a head tax, the statute goes on to prohibit a tax upon the "carriage" of persons in air commerce or on the sale of air transportation. "Carriage" refers to the act of carrying, or transporting, see *Webster's Third New International Dictionary* (1969), and is necessarily directed toward the carrier rather than the passenger, or use of an airport.

■ In the final analysis, appellee's reliance upon the principles of *noscitur a sociis* and *ejusdem generis* is an argument that Congress chose to swat a gnat with a hammer. We think that under all of the circumstances disclosed by the legislative history, Congress was reasonably chargeable with the knowledge that the scope of its technical language would encompass other forms of taxation such as the subject tax. We cannot lightly assume that Congress carelessly misused language which it itself has defined. *Cf. United States v. Hougland Barge Line, Inc.*, 387 F.Supp. 1110 (W.D.Pa. 1974). We think, to the contrary, that Congress' choice of language reflects a more general intent to limit states' ability to increase the effective cost of air fares to the consumer.

■ Finally, we find no support in § 1513(b) for appellee's position. Our own Supreme Court has repeatedly held that the subject Arizona tax is not a sales tax. *State Tax Commission v. Quebedeaux Chevrolet*, 71 Ariz. 280, 226 P.2d 549 (1951); *State Tax Commission v. Garrett Corporation*, 79 Ariz. 389, 291 P.2d 208 (1955), and cases cited therein; *Industrial Uranium Co. v. State Tax Commission*, 95 Ariz. 130, 387 P.2d 1013 (1963); *Tower Plaza Investments Limited v. DeWitt*, 109 Ariz. 248, 508 P.2d 324 (1972). More importantly, we agree with appellant that the "sales taxes" referred to in § 1513(b) on the "sales of goods or services" cannot logically include sales of air transportation or sales directly connected with the carriage of persons in air commerce. If § 1513 as a whole were interpreted otherwise, it would be self-contradictory. Moreover, business privilege taxes such as the subject Arizona tax are common. If such an important kind of tax were to

continue to be permissible, it would have been logical for Congress to have referred to it in subsection (b). Appellee does not contend that the subject tax is a franchise tax, and we do not believe it is. *See* 71 *Am.Jur.2d, State and Local Taxation*, § 266 (1973).

■ We have considered all of the authorities cited by appellee, including *Allegheny Airlines, Inc. v. City of Philadelphia*, 453 Pa. 181, 309 A.2d 157 (1973), and do not find them apposite. We accordingly conclude, on the basis of the plain terms of the statute, that when Congress prohibited a tax upon the carriage of persons in air commerce, it preempted the Arizona transaction privilege tax insofar as it relates to the transportation of persons. Although we are not aware of any reported decision considering the precise issue posed here, the Attorney General of the State of Ohio, considering a similar business privilege tax, reached a similar conclusion. *Ops. Ohio Atty. Gen. 73–117* (November 20, 1973).

■ Neither of the parties has alluded to the fact that, while A.R.S. § 42–1310(2)(d) imposes a tax upon the transporting of freight as well as passengers, the relevant prohibition in 49 U.S.C. § 1513(a) refers only to the carriage of *persons* in air commerce. The doctrine of preemption or supremacy of federal legislation does not extend beyond actual points of conflict. *Colorado Anti-Discrimination Commission v. Continental Air Lines*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). There is accordingly no prohibition against the Arizona transaction privilege tax on transporting freight.

■ While the parties entered into a stipulation of facts for the purposes of their cross motions for summary judgment, their stipulation falls short of an absolute submission of an agreed case. *Cf. Clayton v. Communications Capital Corp.*, 7 Ariz.App. 449, 440 P.2d 330 (1968). There being nothing in the record from which the extent of lawful tax on the transportation of freight can be determined, as opposed to the carriage of persons, both motions for summary

judgment are deniable, *Grain Dealers Mutual Insurance Co. v. James*, 118 Ariz. 116, 575 P.2d 315 (1978), and the cause is remanded for further proceedings.

In accordance with the foregoing, the judgment of the Superior Court is reversed as to that portion of the tax which was imposed upon the privilege of transporting persons, affirmed as to that portion of the tax attributable to the transportation of freight, and remanded for a determination of the amount of tax payable by appellant on account of its freight transportation operations.

Remanded.

DONOFRIO, J., concurs.

FROEB, Presiding Judge, dissenting:

I disagree with the interpretation given by the majority to 49 U.S.C. § 1513. Paragraph (a) is the prohibition provision. If the Arizona transaction privilege tax is not prohibited by paragraph (a), there is no need to decide if the tax comes within the exceptions in paragraph (b).

A reading of the Senate Commerce Committee Report 93–12 indicates very clearly that the legislation was intended to put an end to state-imposed passenger "head taxes" and their analogues. There is no indication that the legislation was intended to prohibit a transaction business tax upon intrastate air carriers.

"Air commerce" and "air transportation" are technical terms defined in Title 49 of the United States Code. These definitions apply to these terms as they are used in 49 U.S.C. § 1513.

In paragraph (a) of 49 U.S.C. § 1513, there appears the phrase "... or on the gross receipts derived therefrom." In my opinion, this relates only to the immediately preceding words "... the sale of air transportation." It does not relate to earlier language dealing with "air commerce."

"Air transportation," as pointed out in the majority opinion, refers to interstate and foreign, but not intrastate, air carriage whereas "air commerce" includes intrastate air carriage because it relates to operation of aircraft along federal airways within a state.

The question thus narrows to whether the Arizona transaction privilege tax is a "tax, fee, head charge, or other charge [direct or indirect], on persons traveling in air commerce or on the carriage of persons traveling in air commerce." In my opinion, it is not included in this category.

Paragraph (b) of 49 U.S.C. § 1513 sets forth a nonexclusive list of exceptions wherein a state may levy a tax in this area. The existence of these exceptions provides a further indication of congressional intent to allow Arizona to levy the transaction privilege tax upon Cochise Airlines. I would affirm the judgment.