**In re Vincent J. MENIER, et al.,
Debtor and Debtor-In-Possession.**

**Bankruptcy No. B84–01963.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

March 10, 1986.

Richard G. Hardy, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for Portage County Regional Airport Authority.

M. Colette Gibbons, Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Cleveland, Ohio, for debtor, debtor-in-possession.

## MEMORANDUM OF OPINION AND ORDER

JOHN F. RAY, Jr., Chief Judge.

This matter is before the Court on the motion of the Portage County Regional

Airport Authority ("PCRAA") for relief from stay and payment of administrative expenses. The PCRAA operates the Portage County Airport. On property immediately adjacent to the airport, debtor-in-possession ("Debtor") operates a business involving aircraft repair, fueling, sales and flight training, known as Marian Aviation.

The PCRAA originally acquired title to the property on which the airport is situated by a grant of moneys from the State of Ohio dated May 8, 1970. In June, 1981, the PCRAA sold all of the land, except for the airstrip, to William J. Zahuranec. Zahuranec sold the land and airport facilities to Debtor in August, 1981; thus the PCRAA now holds title only to the airstrip. The grant agreement provides in ARTICLE THREE, part 2, "that no charge for landing on the airstrip will be made other than in conformity with the rules and regulations of the Director of Commerce."

From time to time, the PCRAA promulgates rules and regulations (the "PCRAA Rules and Regulations") which govern the use of the Portage County Airport. Among the PCRAA Rules and Regulations are the following:

(a) All commercial enterprises located at or on the perimeter of the Portage County Airport which desire to use airport facilities are required to pay certain fees to the PCRAA. Such fees were $50.00 per month during 1984 and are $100.00 per month during 1985. (Said fees are hereinafter referred to as the "Class I Fees".)

(b) All owners of buildings, hangers, offices or dwellings located on the perimeter of the Portage County Airport which are related to aircraft activity are required to pay a fee of $2.00 per 1,000 square feet per month payable in one annual installment in January of each year. (Said fees are hereinafter referred to as the "Class II Fees".)

(c) All fixed base operators dispensing fuel at the Portage County Airport are *required to pay certain fees to the* PCRAA. Said fees are an amount equal to three cents per gallon on all fuel dispensed during 1984 and six cents per gallon on all fuel dispensed during 1985. (Said fees are hereinafter referred to as the "Fuel Dispensing Fees".)

(d) The Fuel Dispensing Fees, and an accounting of all fuel dispensed during the previous month, are to be forwarded to the PCRAA by the tenth (10th) of each month.

(e) A monthly report is to be submitted by all commercial operations on or before the fifth (5th) day of each month which sets forth a current list of aircraft and employees.

(f) Among the remedies available to the PCRAA pursuant to the PCRAA Rules and Regulations and otherwise with respect to persons and entities which do not fully comply with the PCRAA Rules and Regulations is the denial to said persons or entities of further use of the facilities of the Portage County Airport.

Debtor has not paid any of the three types of fees since March of 1984. It filed its petition on July 31, 1984; thus it owes $250.00 for Class I fees that are unpaid pre-petition, and $1,500.00 for post-petition arrearages. Debtor owns 30,932 square feet of property on which it owes $742.36 in Class II fees. Finally, Debtor has neither presented an accounting of the fuel it has dispensed, nor paid any fuel dispensing fees. The PCRAA asks either that the above amounts, whether pre-petition or post-petition, be paid as administrative expenses under 11 U.S.C. section 503(b), or that it be given relief from stay under 11 U.S.C. section 362(d) to prevent the Debtor from using the Portage County Airport.

Debtor has attacked all of the fees on several grounds, alleging that they are imposed without authority, and that they violate both the due process and equal protection clauses of the Fourteenth Amendment. Because the Court agrees that the PCRAA was without authority to impose the Class I, Class II and fuel dispensing fees, there is no need to reach the constitutional issues.

Debtor first argues that these fees are preempted by 49 U.S.C.A. section 1513:

(a) No State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; except that any State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) which levied a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom prior to May 21, 1970, shall be exempt from the provisions of this subsection until December 31, 1973.

(b) *Permissible State taxes and fees*

Except as provided in subsection (d) of this section, nothing in this section shall prohibit a State (or political subdivision thereof ...) from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a State (or political subdivision thereof ...) owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities.

. . . .

(d) *Acts which unreasonably burden and discriminate against interstate commerce; definitions*

(1) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

. . . .

(C) levy or collect an ad valorem property tax on air carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(2) In this subsection—

. . . .

(C) "air carrier transportation property" means property, as defined by the Civil Aeronautics Board, owned or used by an air carrier providing air transportation.

■ The original aim of this section was to prevent the collection by states of "head taxes" on airline passengers. Head taxes were taxes assessed against an airline based on the number of passengers carried. *Indianapolis Airport Authority v. American Airlines, Inc.*, 733 F.2d 1262, 1265 (7th Cir.1984). The primary problem addressed by section 1513 is the burden laid on airlines by local airport authorities. *Id, Arizona v. Cochise Airlines*, 128 Ariz. 432, 626 P.2d 596 (1981). Debtor argues that the fuel dispensing fees violate subsection (a), because they indirectly burden persons traveling in interstate commerce. This is because aircraft traveling interstate refuels at the airport.

However, the tax here on the sale of a gallon of gasoline is not directly on the operation of an aircraft or on persons traveling in commerce. *Cf. Arizona Cochise Airlines, Inc., supra.* It is a tax on the sale of gasoline and, if anything, it most resembles a sales tax which is exempted from the operation of section 1513(a) by section 1513(b). *See Air Jamaica, Ltd. v. State*, 374 So.2d 575 (Fla.App.1979). Therefore, 49 U.S.C.A. section 1513 does not affect the fuel dispensing fee.

■ Debtor further argues that the Class I and Class II fees are preempted by section 1513(d). However, this applies only

to "air carriers" providing "air transportation" (section 1513[d][2][B]).

"Air carrier" is defined as:

any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation....

(10) "Air transportation" means interstate, overseas, or foreign air transportation or the transportation of mail by aircraft.

(21) "interstate air transportation", "overseas air transportation", and "foreign air transportation", respectively, mean the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft, in commerce between, respectively—

(a) a place in any State of the United States ... and a place in any other State of the United States ...; or between places in the same State of the United States through the airspace over any place outside thereof—....

49 U.S.C.A. § 1301(3), (10), (21).

Debtor argues that it is an air carrier because it operates a flight school. However, these operations do not go interstate and do not meet the statutory definition of "air transportation." Furthermore, Debtor is not transporting people or freight, but is teaching flying. Debtor is not an air carrier within the meaning of section 1513(d), and that section does not apply here.

Since these charges are not preempted by federal law, we next look to the relevant state statutes.

The PCRAA is authorized to assess fees under section 308.06 of the Ohio Revised Code. It is not given any power to assess taxes.

[The Regional Airport Authority]

(E) May fix, alter, and collect rates and rentals and other charges for the use of airports and airport facilities under its jurisdiction to be determined exclusively by it for the purpose of providing for the payment of the expenses of the regional airport authority, the construction, improvement, extension, repair, maintenance, and operation of airports and airport facilities under its jurisdiction, the payment of principal and interest on its obligations, and to fulfill the terms of any agreements made with the purchasers or holders of any such obligations, or with any person or political subdivision.

Ohio Rev.Code Ann. § 308.06(E).

The PCRAA characterizes the charges here at issue as fees; Debtor calls them a tax.

 One question that must be answered is what types of charges are contemplated by the phrase "other charges for the use of airports ..." Section 308.06(E) refers to "rates and rentals" and nowhere refers to taxes or assessments. Under the doctrine of *ejusdem generis*, this section must be limited to "other charges" which are like "rates and rentals" rather than in the nature of taxes. This is especially so since the power of a subdivision to tax must be expressly given, and is strictly construed to limit it to the types of taxing power given. *State, ex rel Toledo v. Cooper*, 97 Ohio St. 86, 119 N.E. 253 (1917); *cf. Towne Properties Inc. v. Fairfield*, 50 Ohio St.2d 356, 364 N.E.2d 286 (1977). The issue, therefore, is whether these charges are allowable fees or are unpermissible taxes.

The Ohio Supreme Court, comparing taxes with debts, said:

It is generally considered that a tax is not a debt, and that the municipality to which the tax is payable is not a creditor of the person assessed. A debt is a sum of money due by certain and express agreement. It originates in, and is founded upon, contract express or implied. Taxes, on the other hand, do not rest upon contract, express or implied. They are obligations imposed upon citizens to pay the expenses of government. They are forced contributions, and in no way dependent upon the will or contract, express or implied, of the persons taxed.

*Tax Commission of Ohio v. National Malleable Castings Co.*, 111 Ohio St. 117, 131–32, 144 N.E. 604 (1924).

A "fee" has been defined in Ohio as: A fee is a charge fixed by law for the service of a public officer or for the use of a privilege under the control of the government, as sheriff's fees, custom house fees, license fees; whereas the term "costs" means, in a general sense, expense incurred in litigation.

The term "fees" is used to designate the sums prescribed by law as charges for services rendered by public officers. City of St. Louis v. Meintz, 107 Mo. 611; 18 S.W. 30, 16 Words and Phrases, per Ed. Page 309.

*Albright v. Belmont County*, 26 Ohio Op. 244, 245 (1943).

In Ohio, for these charges to be fees, they must be for use of a privilege under the control of the PCRAA, and there must be some aspect of contract or consent in order to avoid their being a tax.

At the outset, the Court notes that the basis for the charges here, ownership of property adjacent to the airport and selling gasoline, are not under the exclusive control of the PCRAA; in both actions there are private property rights involved. What the PCRAA has control over is the use of the airport; while the airport is used either to effectuate the transactions here at issue or add value to the property, the actual exchange or ownership itself is not controlled by the PCRAA, but by private individuals. Thus, the charges here are not fees in the same sense as license fees. There is not an exchange of money for use of the airport, but an exchange of money for the right to get a benefit from the airport. Under Ohio Revised Code section 308.06, the PCRAA is limited to charging for the use of the airport.

This same line of reasoning was applied by the Supreme Court to distinguish fees from taxes. In the companion cases of *National Cable Television Association v. FCC*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974) and *FPC v. New England Power Co.*, 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974), the court said:

Taxation is a legislative function and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. *A fee, however, is incident to a voluntary act,* e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

415 U.S. at 340–41, 94 S.Ct. at 1149 (emphasis supplied, footnotes omitted).

At issue in *National Cable* was a charge of 30 cents per subscriber on CATV Systems to help defray regulatory costs. These charges were enacted pursuant to 31 U.S.C. section 483(a), which authorized federal agencies to charge fees for services they provided. In invalidating the 30 cent charge, the Supreme Court relied on the fact that the benefits of FCC regulation of CATV Systems inured to the public as well as the CATV Systems, and there was, therefore, no "special benefit" to the CATV Systems alone. Without the special benefit, there was no voluntary act which would justify a fee. The court held the charge was a tax. *Id.* at 342, 94 S.Ct. at 1150; *Accord United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1106 (6th Cir.1984); *New England Power Co. v. NRC*, 683 F.2d 12, 14 (1st Cir.1982); *Yosemite Park and Curry Co. v. United States*, 231 Ct.Cl. 393, 686 F.2d 925, 931 (1982); *United States v. King (In re King)*, 19 B.R. 936, 938 (Bankr. M.D.Tenn.1982); *Emerson College v. City of Boston*, 391 Mass. 415, 462 N.E.2d 1098, 1105 (1984).

For the same reasons, the charges here must be considered taxes and not fees. The moneys collected go for the general maintenance of the airport. While a well maintained airport does benefit Debtor's business, it benefits all members of the aviation community as well, and to the same extent. The fact that Debtor's business depends upon sales to aviation consumers does not increase the benefit it gets from the PCRAA. While it is enabled to sell to aviation consumers, aviation con-

sumers to the same extent may buy from Debtor. There is no "special benefit" conferred on Debtor by these charges. Without the special benefit, the charges are not incurred voluntarily. Because the charges are not voluntary, there is no aspect of contract which, in Ohio, makes them taxes.

Indeed these fees apply even if no use of the airport is made at all. If the Class I users conduct no operations in a given month or attract no business to the field, they still must pay a fee. The same is true for the Class II fees. If Debtor put gasoline in planes that did not take off from the airport, it would still owe a fuel dispensing fee. Without the special benefit, these charges are not incurred voluntarily. Because they are not incurred voluntarily, under Ohio law they are taxes and the PCRAA, being without taxing powers, could not validly impose them on Debtor.

The Class I, Class II and fuel dispensing fees not being valid under Ohio Revised Code section 308.06(E), the motion of the Portage County Regional Airport Authority for relief from stay is denied. The motion for payment of administrative expenses is likewise denied.

IT IS SO ORDERED.